UNITED STATES of America, Appellee,

v.

Roger P. COTE, Defendant-Appellant.

No. 1548, Docket 84–1059.

United States Court of Appeals, Second Circuit.

Argued Aug. 7, 1984.

Decided Sept. 18, 1984.

Thomas G. Dennis, Federal Public Defender, Hartford, Conn., for defendant-appellant.

Charles Dearborn, Law Student Intern, D. Conn. (Alan H. Nevas, U.S. Atty. for the D. Conn., Harold James Pickerstein, Chief Asst. U.S. Atty., William I. Shockley, Asst. U.S. Atty., New Haven, Conn., of counsel), for appellee.

Before VAN GRAAFEILAND and WINTER, Circuit Judges, and BARTELS, District Judge.*

WINTER, Circuit Judge.

Roger P. Cote appeals from his conviction by a jury on two counts of transporting stolen firearms, in violation of 18 U.S.C. § 922(i), and one count of conspiracy to transport stolen firearms, in violation of 18 U.S.C. § 371. The issue in this case arises from the exposure of the jury to highly prejudicial evidence admitted upon the government's representation that it would later be connected to defendant. Because no such connection was made and because the effects of exposure to the jury of this evidence could not be dissipated by cautionary instructions, we reverse.

## BACKGROUND

Cote was named a defendant in three counts of a ten-count indictment alleging that he, Patrick Giles, and Debra Estabrook violated and conspired to violate federal firearms laws. Prior to trial, Giles pled guilty to one count of the indictment and agreed to testify against Cote. Co-defendant Debra Estabrook entered into a pretrial agreement whereby she also agreed to testify against appellant.

Because events at trial are the basis for our decision, we examine those proceedings in some detail. The government called Estabrook as its first witness. She testified that in October, 1982, she was living with Giles in Putnam, Connecticut. At that time, Cote, her cousin, proposed to Giles that they break into houses and steal items including jewelry, silver, and weapons for resale. At first, according to Estabrook,

Giles refused, but in November, 1982, agreed to commit break-ins with appellant. Estabrook testified that on an unspecified number of occasions Giles and Cote left in the morning to commit thefts in nearby towns. In the afternoon, they returned to Estabrook's apartment to divide up the stolen merchandise, which occasionally included firearms. In all, Estabrook stated she saw at least eight guns brought into her apartment in November and December, 1982. Several of the weapons, however, were brought by Giles alone, who, according to Estabrook, carried out some break-ins without Cote.

Following Estabrook, the government called Richard Blymiller. Blymiller began to testify that on October 25, 1982 his house had been broken into and three guns had been stolen. Defense counsel objected on the grounds that Cote had not been charged in the indictment with any theft that occurred on October 25, 1982. At sidebar, the prosecutor stated that the October 25 burglary "is an overt act in the conspiracy; obviously the man has to be present to testify as to what was stolen, and to identify any weapons that were recovered." Judge Clarie admitted Blymiller's testimony but instructed the jury that the government still had the burden of proving appellant conspired with Giles in planning that crime. Blymiller identified the three guns that were stolen from his house on October 25th. The three weapons, a 20-gauge shotgun, a Marlin rifle, and an 8-millimeter Mauser, were admitted as exhibits.

The government then called Joseph Antos to testify about a burglary at his house on December 13, 1982. Defense counsel pointed out that Cote had not been charged with any crime that had occurred on that date. Judge Clarie again cautioned the jury that the government had to prove "that Cote was an active participant in the conspiracy." Antos then testified that his house in Dudley, Massachusetts had been

---

* The Hon. John R. Bartels, Senior United States District Judge for the Eastern District of New York, sitting by designation.

broken into and that, among other things, six guns were stolen. Antos identified three weapons, a Ruger target pistol, a Winchester rifle, and a Browning shotgun, which were admitted as exhibits.

Eugene Beaudry was then called and testified that his home in Sturbridge, Massachusetts had been burglarized on December 17, 1982 and that two guns had been stolen. Beaudry identified one, which became another exhibit. Appellant offered no objection to Beaudry's testimony and asked for no limiting instructions, presumably because count eight of the indictment charged Cote with interstate transportation of firearms on December 17, 1982.

At the second day of trial, Anthony Tedona testified that on December 21, 1982, a Colt pistol was stolen from his home in Chepachet, Rhode Island. The pistol, which Tedona identified, was admitted as an exhibit. Appellant did not object, presumably because count nine charged Cote with interstate transportation of firearms on December 21st.

The balance of the second day was taken up by witnesses who testified that they had purchased or been given guns by Giles. These guns had been stolen from the houses of Blymiller, Antos, Beaudry or Tedona. None of the witnesses, however, connected Cote with the sale of the weapons.

On the third day, Giles was called. He corroborated Estabrook's statement that Cote had originally approached him about committing break-ins in October, 1982. Giles further testified that during the morning of December 17, 1982, he and Cote had broken into Beaudry's house in Sturbridge and stolen two guns and a coin collection. Giles testified that Cote had given one of these guns to Cote's father while Giles had kept the other. Giles also stated that on December 21, 1982 he and Cote had left Danielson, Connecticut at approximately 8:00 a.m. and burglarized Tedona's house in Chepachet, Rhode Island at 11:30 a.m. Giles testified that during this break-in, he and Cote had taken a 22-caliber pistol, earlier identified by Tedona, and some money. Giles gave the pistol to Esta-

brook's father, Hector Cote, as a Christmas present.

Giles was then asked by the prosecutor about the December 12th burglary of Antos' house in Dudley but stated that he had committed the crime without Cote. In answer to questions from Judge Clarie, Giles stated that Cote had not shared in the proceeds and that he, Giles, had committed the theft on his own. Even though the December 12th burglary fell within the time period of the conspiracy count, Judge Clarie struck all evidence concerning that burglary since Cote had been involved in neither the planning, the execution nor the receipt of the fruits of the crime. He also gave the jury a general curative instruction.

Giles then testified that he had committed the October 25, 1982 burglary of Blymiller's home in Danielson on his own and had never discussed it with Cote. The court asked Giles a series of questions leading to the conclusion that Cote was also not involved in the Blymiller theft in any way. The district judge then struck all evidence of that burglary from the record.

The defense case, which took up the rest of the third day of the trial, consisted of two witnesses, JoAnn Cote, appellant's estranged wife, and Pat Leo, a claims supervisor at the Danielson branch of the Connecticut Unemployment Office. Ms. Cote testified that on December 17th, the date of the Beaudry burglary in Sturbridge, the Cotes had spent the entire day together apartment hunting and watching television. Ms. Cote also stated that on December 21st, the date of the Tedona burglary, she drove appellant to the unemployment office at approximately 9:00 a.m. for a 9:45 appointment. Ms. Cote testified that she waited for Cote at the office for approximately thirty minutes. After appellant picked up his check, Ms. Cote stated, the couple cashed it at a local bank.

The second defense witness, Pat Leo, corroborated Ms. Cote's testimony about appellant's December 21st appointment at the unemployment office. Leo's records indicated that a person of approximately

Cote's age had in fact picked up an unemployment check between 9:45 a.m. and 10:15 a.m. on December 21, 1982. Leo's testimony, which strongly supported Cote's alibi, was also consistent with Estabrook's testimony that Giles had given a pistol he had stolen on a solo burglary to her father for a Christmas present, a weapon taken from the Tedona home on December 21st.

Appellant was found guilty on all three counts of the indictment. Judge Clarie sentenced Cote to four years imprisonment on each count, the terms to run concurrently.

We reverse because we believe that exposure of the jury to evidence of the Blymiller and Antos thefts, and weapons stolen in the course of those burglaries, was likely to have prejudiced the jury's consideration of Cote's guilt.

## DISCUSSION

The government concedes that the evidence of two burglaries and several sales of weapons, consisting of the testimony of five witnesses and of six firearms admitted as exhibits, was irrelevant. The exposure of the jury to this evidence occurred because of a tactical decision by the government as to the order of its proof. Giles, the witness who was to connect Cote to the Antos and Blymiller burglaries, could have testified first, and the evidence in question would have been self-evidently irrelevant. Instead, the prosecutor chose to save Giles for last (a final witness was called only to rebut implications of Giles' cross-examination). The result was thus to expose the jury to the irrelevant evidence described above.

■ · We appreciate the need for leeway so counsel may select the most persuasive order of proof. We also recognize that this goal, or a desire to expedite the pace of the trial by putting all of a witness's testimony on at once, may require that evidence be admitted provisionally with a view to connecting it up by later evidence, as is expressly contemplated by Fed.R.Evid. 104(b). However, representations, express or implied, that otherwise irrelevant evidence will be tied to a defendant by subsequent testimony should not be made without a good faith and objectively reasonable belief that the missing links will in fact be supplied.

■ No reason has been offered in the instant case for the failure to connect this evidence to the defendant.[1] Giles had pled to one count and was cooperating with the government. The prosecutor thus either knew or should have known of the content of his testimony when she offered the evidence relating to the Antos and Blymiller burglaries. If doubt existed, such evidence, which was cumulative even if connected to Cote by Giles, should not have been offered until after Giles testified.

We turn now to the question of whether the jury's exposure to the evidence in question calls for reversal notwithstanding the striking of that evidence and the giving of cautionary instructions by the district judge. We believe the inference of prejudice here is irresistable.

The stricken evidence included six firearms and the testimony of two crime victims, and of three other people who purchased stolen weapons. This testimony and the physical exhibition of firearms to the jury exhanced the chances of a conviction even though it was irrelevant.

Cote was portrayed as having suggested the break-ins to Giles, and the jury's verdict may well have been influenced by a lingering belief that Cote was morally responsible for all of Giles' conduct, notwithstanding the cautionary instructions as to his legal liability. This taints the entire verdict.

---

1. Neither the student intern who argued for the government (and performed admirably in presenting what was a difficult case) nor the Assistant United States Attorney who accompanied him were trial counsel or were informed of the reasons for the events described above. They were thus unable to enlighten us as to why the government proceeded as it did or what it expected Giles to say with regard to Cote's role.

We also note that the evidence against Cote was not overwhelming. *Krulewitch v. United States,* 336 U.S. 440, 444–45, 69 S.Ct. 716, 718–19, 93 L.Ed. 790 (1949); *Glasser v. United States,* 315 U.S. 60, 67, 62 S.Ct. 457, 463, 86 L.Ed. 680 (1942); *Wood v. United States,* 342 F.2d 708, 712 (8th Cir.1965), *cert. denied,* 385 U.S. 978, 87 S.Ct. 520, 17 L.Ed.2d 439 (1966) No disinterested witness linked Cote to any burglary or sale of stolen weapons, and no weapons were ever found in his possession. The witnesses who implicated Cote were co-defendants who testified against him in the hope of lenient treatment. Moreover, Estabrook's testimony was vague and confused and did not link specific crimes to specific dates. She could say only that Giles and Cote had conspired to commit burglaries, and that she had seen Cote bring weapons into her house. Giles' testimony was more damaging but hardly irresistible, a fact underlined in three previous state burglary prosecutions that resulted in acquittals of Cote despite Giles' testimony against him. Cote, on the other hand, offered alibi evidence for the remaining two burglaries, including a neutral witness whose testimony tended to undermine Giles' version of the Tedona burglary.

Considering both the cause of the error, the nature of the evidence involved, and the closeness of the case, we believe that cautionary instructions could not adequately protect the defendant's right to consideration of his guilt by a jury uninfluenced by extraneous matters. We therefore reverse.