STATE of Missouri, Respondent,

v.

Vincent SARGENT, Appellant.

No. 48604.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 26, 1985.

Motion for Rehearing and/or Transfer
Denied Dec. 31, 1985.

Application to Transfer Denied
Feb. 18, 1986.

William Webster, Atty. Gen., Gary L. Gardner, Asst. Atty. Gen., Jefferson City, for respondent.

Dave Hemingway, St. Louis, for appellant.

SIMON, Presiding Judge.

Defendant, Vincent Sargent, was found guilty of capital murder, § 565.001 RSMo 1978, by a jury in the Circuit Court of St. Louis County. Pursuant to the verdict he was sentenced to life imprisonment without the possibility of parole for fifty years. On

appeal, defendant alleges that the trial court erred in: (1) failing to quash a search warrant and suppress evidence seized thereunder because false information was given in supporting affidavits; (2) denying defendant's motion to dismiss based on the destruction of exculpatory evidence; (3) denying defendant's motion to compel a court reporter to type a transcript of a co-defendant's trial for impeachment purposes; (4) admitting hearsay testimony; (5) denying defendant's motion in limine as to evidence of other crimes. We affirm.

We set forth a rendition of the facts in a light favorable to the verdict. In January 1983 Sergeant Charles James, a Pine Lawn police officer, was shot in the head as he and other Pine Lawn officers attempted to execute a search warrant for marijuana and PCP on a residence at 6050 Grimshaw in Pine Lawn, Missouri. The search warrant was based upon the affidavits of Sergeant Charles James and Detective Tony Darris, also a member of the Pine Lawn police department. According to the affidavits, Sgt. James received information from a confidential informant that the defendant was selling marijuana from his residence at 6050 Grimshaw and that the informant had personally seen marijuana and weapons at defendant's residence and had purchased a small quantity from the defendant while inside the residence. Subsequently, James and Darris began investigative surveillance of the residence. During the initial surveillance the officers observed some known drug users enter and leave the premises remaining inside for a brief period of time. With this information and information supplied by the informant, James and Darris secured a search warrant based upon their affidavits.

James and Darris, along with other officers who had been briefed and assigned to the search, left for the residence. Upon arrival, James and officers covered the front door while other officers stationed themselves at the rear door. Sgt. James knocked on the door, identified himself as a police officer, and requested entry into the residence announcing that he had a warrant to search the residence. The officers testified that movement was heard within the residence. One officer testified that he had heard a voice say, "The police, man, the police are outside." Another officer saw a man look out the window, but no one opened the door pursuant to Sgt. James' request. With no response forthcoming, James used a battering ram to force the door open. As the door gave way, Sgt. James lost his balance or stumbled in the doorway to one-third of his height. At that moment, a man, later identified as Vincent Sargent, defendant, stepped around a corner from the kitchen into an archway between the kitchen and the dining room, fired a shot and stepped back behind the corner. The shot struck James in the right temple. The impact caused James to fall to the left and backway into the left arm of another officer, West, who tried to support him, but James continued to fall backward into an iron gate which secured the front door. Defendant stepped into the archway again and aimed but West fired a shot in the direction of the defendant who retreated behind the corner. Defendant appeared again, and officer West fired another shot at him. Defendant appeared a final time and another officer fired a shot at him. None of the shots struck the defendant. Officers then began to enter through the front of the residence and saw defendant in the kitchen pointing his cocked gun toward the back door where other officers were entering the house. The defendant was subdued and disarmed. A .22 caliber revolver, with eight live cartridges and one spent cartridge, was taken from the defendant. Two unarmed men were found hiding behind a couch. Another man was found in an upstairs bedroom and a loaded .38 caliber revolver was recovered from him. The defendant and the other three men were taken into custody by officers, while other officers remained at the scene. These officers seized, at various locations in the house, several items including a bag of marijuana from the kitchen, valium, darvon and a quantity of marijuana laced with PCP from the basement, and other weapons, including a .22 caliber rifle and 12

gauge shotgun. A spent shell casing, fired from the weapon recovered from the defendant, was found on the floor at the archway. All evidence was transported to the police station. James was transported by ambulance to County Hospital where he died the following day of a gunshot wound to his head.

Subsequently, the defendant, in custody and after being advised of his rights, was questioned and admitted shooting James with a .22 caliber pistol. An autopsy performed on James' body revealed that he died of a gunshot wound to the head. The bullet entered over the right temporal parietal area of his brain and traveled from right to left, backward and down across his brain. No bullet was recovered in this autopsy. At the defendant's request, a second autopsy was performed following a court ordered exhumation and a bullet fragment was recovered from the spinal canal. A ballistics expert testified at trial that the fragment was a .22 caliber and the striations on it matched those of the gun recovered from the defendant.

The defendant raised as part of his defense that James had been shot by one of his own officers and that his shot never hit James. Pursuant to this defense the defendant moved to dismiss the charges because the state had destroyed exculpatory evidence. Specifically, the defendant alleged that damage done to a police captain's vehicle, which was parked in front of the residence on the day James was shot, was caused by a stray bullet from defendant's gun thus creating a reasonable doubt that his bullet was the one which struck and killed James. Further, he alleges that the police department repaired the vehicle, destroying this evidence. The police captain who owned the vehicle testified that the damage to the fender had been sustained prior to the date of the shooting. Further, a ballistics expert inspected the vehicle at the request of the prosecutor shortly after the shooting and found no evidence indicating that the damage was done by a bullet. There was evidence that the damage had occurred prior to the day of the search.

In the same motion, defendant alleged that the state destroyed other exculpatory evidence as a result of the tests it performed on a piece of woodwork that was removed from the residence by defendant's investigator. The investigator found that a piece of woodwork, located on an upper part of the wall in the area where the defendant had been positioned while exchanging shots with the police, contained two bullet holes in which .22 caliber bullets would fit, but .38 caliber bullets would not. The defendant claims that this evidence would show that the officers at the front entrance had fired .22 caliber weapons at the defendant and not .38 caliber weapons as claimed. This would further support the defendant's theory that the shot he fired did not hit James. The defendant's counsel and a co-defendant's counsel agreed to give the piece of woodwork to the state for ballistics tests. The state's expert, with defense counsel present, made two test holes in the woodwork with .38 and .22 caliber bullets from the same position that the officers had fired at the defendant. The expert testified that upon completion of comparative ballistics test he found that the test hole made by a .38 caliber bullet was similar to the original holes and opined that the reason a .38 bullet would not slide into the original holes was because of the elastic quality of that particular type of wood. Due to the performing of the tests, the size of the original holes were altered. The defendant contends the exculpatory value of the woodwork was destroyed. The defendant offered no rebuttal to the expert testimony nor suggested a less destructive method of testing.

At trial, defendant renewed his pretrial motions to: (1) compel a court reporter to type at the statutory cost his co-defendant's transcript which defendant contended he needed to prepare his defense; (2) to exclude as alleged hearsay an officer's testimony of another officer's knock and announced warning before entering the back door of the residence on the day of the shooting; and (3) to exclude evidence that the weapon seized at the residence by po-

lice officers had been stolen a few months earlier. The trial court denied the motions.

The defendant, having waived an offer by the state to exchange a plea of guilty for 25 years imprisonment, was tried and subsequently convicted of capital murder in a jury trial. He received a sentence of life imprisonment with no possibility of parole for fifty years.

In his first point defendant contends that the trial court erred in denying his motion to suppress the fruits of the search. He argues that the warrant supporting the affidavits contain intentionally false and misleading statements of Officers Darris and James, which if stricken from the affidavits, would result in an invalid warrant because the remaining information is inadequate to support probable cause. The defendant further argues that the evidence of the seized drugs was prejudicial because it supplied the premeditation and deliberation elements necessary to support the capital murder charge. The defendant also alleges that the evidence of the guns was inflammatory and violated his 4th, 5th, and 6th amendment rights.

We first note that the defendant failed to properly preserve the point set forth in his motion in limine by a timely objection at trial. *State v. Moore*, 670 S.W.2d 550, 552 (Mo.App.1984). The record reveals that the defendant failed to object to extensive testimony of police officers concerning events leading up to the search, and the items seized. A laboratory expert also testified without objection to the tests he conducted to determine that the substances seized were marijuana, PCP, valium and darvon. The drugs and guns were not introduced as evidence until after this detailed testimonial evidence was given. Since the defendant failed to preserve the issue, we limit our review to plain error and consider whether manifest injustice affecting substantial rights of the defendant resulted.

Reviewing the affidavits and striking those portions which the defendant contends are misleading and untruthful, we still find the remaining facts to be sufficient to support a finding of probable cause. Initially, we find the information supplied by the informant to be sufficiently reliable where it was based upon first hand knowledge and was reasonably corroborated by other information within the affiant's knowledge. *State v. Phillips*, 532 S.W.2d 533 (Mo.App.1976). The testimony of the informant that she had personally purchased drugs from the defendant at 6050 Grimshaw, that she had smoked marijuana at that residence with the defendant, and that she had personally observed quantities of marijuana while in that residence, remains uncontroverted. The informant's information was corroborated by the affidavits of Officers Darris and James which stated that they identified the house at 6050 Grimshaw as the residence of the defendant based upon the informant's description. The information was further substantiated by the officers' observations made during surveillance that at least two known drug users went into the residence and remained a significantly short period of time. Thus, the information supplied from personal knowledge and corroborated by other evidence from independent sources was sufficiently reliable. Further, after removing those controverted facts in the affidavits, there remain facts that a reliable source of Officer James with first hand knowledge supplied information that drugs were being used and sold at the residence, that while on surveillance of the residence, Officer Darris observed at least two subjects, known to him to be drug users, enter the residence and remain only a short time period. The affidavit of Sergeant James remained uncontroverted with exception of one paragraph which stated that Darris had accompanied James on a second surveillance January 7th, 1983. This was refuted by Darris' deposition in which he testified that he was not on duty on January 7th, 1983. This controverted fact was not so substantial as to undermine the remainder of James' affidavit. Further, the record contains no evidence to indicate that the officers deliberately perjured themselves.

■ Having examined the record, we find reliability in the informant's statements and uncontroverted material facts in the affidavits sufficient to support a finding of probable cause to issue the search warrant. Further, we find no violation of defendant's 4th, 5th, and 6th amendment rights by the officers' seizure of the guns pursuant to a valid search. Therefore, we find no manifest injustice.

In his second point defendant contends that the trial court erred in denying his motion to dismiss claiming the state failed to preserve evidence which in its original form may have had exculpatory value and could have created a reasonable doubt as to defendant's guilt. The defendant further argued that the loss of such evidence could not be remedied anything short of dismissal to preserve defendant's due process right. Specifically, the defendant suggests the state failed to preserve a damaged fender on a police captain's vehicle, which was parked on the street in front of the residence on the day James was shot. The defendant argues the fender could have been tested to support the defendant's theory that the shot fired by defendant missed James and instead hit the vehicle causing damage to the fender.

■ Naturally, the state has a duty to preserve evidence which is expected to play a significant role in a suspect's defense. *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984). To determine whether the loss or destruction of evidence has deprived the defendant of a fair trial, we must assess the state's culpability for the loss and significance of the evidence in light of its nature, its bearing upon critical issues in the case and the strength of the state's untainted proof. *U.S. v. Doty,* 714 F.2d 761, 764 (8th Cir. 1983). The record indicates that the fender was inspected by an expert for the state who found no evidence that the damage was caused by a bullet. Further, there was testimony that the damage had been sustained prior to the date of the shooting.

Additionally, defendant contends that the state failed to preserve in its original form the woodwork taken from the residence and that the woodwork would indicate that the police were using .22 caliber weapons and not .38 caliber service revolvers. Thus, raising a reasonable doubt as to whether James had been shot by the defendant or one of his fellow officers.

■ The record indicates that the defendant's attorney voluntarily gave the woodwork to the prosecuting attorney for testing. Defendant's counsel was present at the making of the test holes, and received a copy of the ballistic report. While the defendant was not able to run his own tests because the original form of the evidence was altered by the tests, he could have offered evidence to rebut the expert testimony or challenge the type and manner of testing performed. The defendant did not present evidence of the state's culpability in destroying the exculpatory value, if any, of the woodwork nor offer an equally reliable alternative test that would have preserved the evidence. Further, the evidence demonstrated by the pathologist's report of the path of the bullet as it entered James' head, the testimony of James' body movement following the bullet's impact, the testimony of the officers at the scene, and the ballistics report constituted substantial evidence to support a finding, beyond a reasonable doubt, that the fatal shot was fired by defendant's weapon. Applying the *Doty* test and considering the state's lack of culpability in the destruction of the evidence, the strength of the state's other untainted proof and the defendant's failure to show the significance of the evidence beyond mere conjecture, we find that the defendant's right to a fair trial was not violated by the destruction or loss of the evidence.

In his third point the defendant alleges the trial court erred in denying his motion to compel the court reporter to type the co-defendant's trial transcript where no adequate alternative to that transcript existed. The defendant alleges he was denied its use as a discovery and impeachment device in violation of his due process rights. Defendant claims the sole obstacle to its

reproduction was the reporter's demand for a price in excess of the statutory amount allowed.

The defendant originally requested a copy of the co-defendant's entire trial transcript and subsequently modified and narrowed that request to testimony of all the state's witnesses plus two juveniles who testified for the co-defendant. The trial court denied the motion, but did order the state to provide a copy of any portion of that trial which they presently had in transcript form. The trial court in denying defendant's request stated that in viewing the practicalities, the time required to prepare a thirteen hundred page transcript in time for defendant's trial would impose an undue burden on the court reporter and impair the trial of other docketed cases. He also stated that if the transcript was ordered, the defendant could be sitting in jail as long as a year waiting the transcript's completion, thereby denying defendant's right to a speedy trial.

 We first note that while there is authority for indigents to be furnished a trial transcript for purposes of appeal, we find no constitutional right that a defendant be furnished a transcript of a co-defendant's trial, although such may be ordered if it is necessary to the defense and is available. *See State v. Rollie*, 585 S.W.2d 78, 86 (Mo.App.1979). Here, the trial judge did not deny the defendant a transcript on the basis of his indigent status. He based his denial on the undue burden on the judicial system and the overriding concerns for the defendant's constitutional right to a speedy trial. We find no equal protection problem as the judge in his discretion denied the motion on grounds other than indigency. *State v. Ambus*, 522 S.W.2d 306, 310 (Mo.App.1975); *State v. Jones*, 545 S.W.2d 659, 664 (Mo.App.1976). Further, defendant has not established that a transcript of the co-defendant's trial was the only available source of the information sought. Depositions or in-court testimony were possible alternatives. We find no abuse of discretion.

Defendant's fourth point on appeal contends the trial court erred in allowing hearsay statements of one police officer who testified that another officer yelled, "Police, open up." Defendant claims this statement prejudiced defendant's contention that no announcement had been made thus negating the deliberation and premeditation element of the charge of capital murder.

 Testimony of a witness regarding the statement of another is hearsay only when the statement is offered as proof of the matters stated therein. *Still v. Travelers Indemnity Co.*, 374 S.W.2d 95, 102 (Mo.1963). Upon review of the record it is evident that the challenged testimony was not hearsay. The questions asked of the witness were to determine if the announcement was made not to prove whether or not the police were at defendant's front door. Thus, the trial court properly allowed the statements. Point IV is without merit.

The defendant's final point on appeal is that the trial court erred in denying defendant's motion in limine and objection at trial to the admission of evidence that the weapons seized at the residence were stolen from a gun shop two months earlier. The defendant alleges that the evidence constituted evidence of crimes other than those for which the defendant was charged, did not fall within a recognized exception, and was unrelated to any material issue in the case.

The record indicates that the defendant filed a pretrial motion in limine to bar the state from bringing in any evidence that the guns, seized from the residence on the day James was shot, was stolen from a gun shop in St. Charles, Missouri. The trial court reserved ruling. At trial the state called the owner of the gun shop who identified the guns as being those taken in a recent burglary and presented the gun shop record book which contained serial numbers matching those of the seized guns. The defendant failed to object to this testimony.

The defendant objected to the state's offer of the gun shop records into evidence after extensive testimony had been heard which identified the weapons seized as weapons which had been stolen from a gun shop two months earlier. When a motion to suppress has been denied and the evidence is subsequently offered at trial, a defendant must make a timely objection in order to preserve the issue for review. *State v. Harris,* 670 S.W.2d 526 (Mo.App.1984); *State v. Yowell,* 513 S.W.2d 397 (Mo. banc 1974). In this case defendant's objection came too late. The defendant failed to object to the oral testimony which showed evidence of other crimes. He objected only when the state moved, following the testimony, to accept the store records into evidence. The alleged damaging evidence had already been presented to the jury without objection through the oral testimony of the shop owner and the untimely objection failed to preserve the issue for review. *State v. Hepperman,* 349 Mo. 681, 162 S.W.2d 878, 886, 887 (1942). Thus, we limit our review to plain error affecting substantial rights resulting in manifest injustice. Rule 29.-12(b).

The possession of stolen property is relevant to two contested issues in this case, motive and intent. The evidence of possession of stolen property, a felony, is probative of defendant's motive for failing to respond to the officers' announcement and request to enter and to search the residence. *State v. Jackson,* 446 S.W.2d 627, 629 (Mo.1969). It is also probative of the intent with which defendant acted in firing into the doorway. *State v. Richardson,* 515 S.W.2d 571, 573 (Mo.1974). Finding the evidence probative of material facts in issue, there is no manifest injustice in its admission merely because it incidentally shows evidence of a crime other than one with which the defendant has been charged. Point V is without merit.

Judgment affirmed.

STEPHAN, C.J., concurs.

SATZ, J., concurs in result.