Vincent E. SARGENT, Appellant,

v.

Bill ARMONTROUT, Appellee.

No. 87–1407.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1988.

Decided Feb. 29, 1988.

Rehearing and Rehearing En Banc Denied April 14, 1988.

Pamela D. Perdue, Clayton, Mo., for appellant.

Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MAGILL, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Vincent Sargent appeals from an order of the district court[1] denying his petition for a writ of habeas corpus. For the reasons stated below the order of the district court is affirmed.

## I. BACKGROUND

On January 8, 1983 Sergeant James and Detective Darris of the Pine Lawn, Missouri, Police Department obtained a warrant to search Sargent's residence for marijuana and PCP. The warrant was based on the affidavits of James and Darris wherein James recounted the information given to him by an informant and both recounted observations made when they conducted a surveillance of Sargent's residence.

On the same day James, Darris, and several other police officers approached the front and rear doors of Sargent's residence. Sargent was ordered to open the door and when there was no response James broke open the door with a battering ram. James' momentum carried him a short distance into the front room where Sargent shot him with a .22 caliber revolver. Shortly thereafter, Sargent was taken into custody. A search of his residence revealed marijuana, valium, Darvon, a .22 caliber rifle, and a 12 gauge shotgun. While in custody Sargent admitted that he shot James in the head with a .22 caliber revolver. On January 9, the day after he was shot, James died from the gunshot wound.

Sargent was convicted by a jury of capital murder and sentenced to life imprisonment without possibility of parole for fifty years. Sargent's conviction was affirmed

---

1. The Honorable John F. Nangle, United States Chief District Judge for the Eastern District of Missouri.

by the Missouri Court of Appeals. *State v. Sargent*, 702 S.W.2d 877 (Mo.App.1985). Subsequently he filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Missouri. As grounds for relief Sargent alleged that: 1) he was not provided an opportunity for full and fair litigation of whether there existed probable cause for the issuance of the search warrant; 2) due process was violated when the state trial judge refused to order that he be provided with a transcript of a co-defendant's trial; 3) the trial judge erroneously admitted other crimes evidence; 4) destruction of evidence by the state denied him a fair trial; and 5) his confrontation rights were violated by the admission of out of court statements.

The district court denied Sargent's petition and on appeal Sargent raises all five issues once again. Each issue, along with the relevant facts, will be discussed separately.

## II. DISCUSSION

### A. Validity of Search Warrant

Prior to his state court trial, Sargent sought to suppress the guns and drugs seized during the search of his residence on the grounds that the search warrant was not supported by probable cause. Based on depositions taken by another lawyer in a codefendant's trial, Sargent learned that Detective Darris' affidavit in support of the search warrant contained false information regarding Darris' personal observations and the reliability of the informant.

At the suppression hearing neither Darris nor the informant appeared to testify, although Darris had been subpoenaed. The trial court considered and denied the motion to suppress. On appeal the Missouri Court of Appeals considered "whether manifest injustice affecting substantial rights of the defendant resulted," because Sargent had failed to make a timely objection at trial. *Sargent*, 702 S.W.2d at 881. The court "[r]eview[ed] the affidavits * * * striking those portions which the defendant contends are misleading and untruthful," and concluded that "the remaining facts

[are] sufficient to support a finding of probable cause." *Id.*

Sargent next challenged the introduction of the guns and drugs in his petition for a writ of habeas corpus. Recognizing that *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976) bars federal courts from considering Fourth Amendment claims "where the State has provided an opportunity for full and fair litigation" of those claims, Sargent argued that he was denied full and fair litigation because Darris and the informant were unavailable for cross-examination at the suppression hearing. The district court disagreed, in part because it erroneously believed that Sargent's attorney had taken the depositions of Darris and the informant.

On appeal to this court, Sargent argues that he was not provided a full and fair hearing because he was "effectively denied the opportunity to confront the two primary witensses [sic] against him." Reply Brief for Appellant at 4.

■ As persuasive as Sargent's argument may be, resolving this issue in his favor does not entitle him to habeas relief. To say that *Stone v. Powell* is inapplicable because the Fourth Amendment claim was not fully and fairly litigated is merely to pass the first milepost in the long and arduous journey toward relief. If we assume that *Stone* is inapplicable, then Sargent is entitled to argue his Fourth Amendment claim on the merits. Yet, even if Sargent is victorious on the merits he will nevertheless be denied relief if we find "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

We have studied the record in this case and find no reason to believe that the jury based its verdict on the fact that drugs and guns were found during the search. Sargent was convicted by overwhelming evidence of murdering a police officer. While in custody he admitted firing the fatal bullet. A ballistics expert testified at trial

that striations found on the bullet fragment recovered from the officer's spinal canal matched those of the gun Sargent fired. We fail to see how the outcome of Sargent's trial could possibly have been different had he succeeded in suppressing the evidence. Regardless of the existence of guns and weapons in the residence, the jury was presented with evidence showing that: 1) the police knocked on the door; 2) James identified himself and requested entry to execute a warrant, the validity of which Sargent had no reason to doubt; 3) after getting no response the police broke down the door and entered the residence; and 4) Sargent stepped from behind a wall and shot James in the head.

Because we are convinced that any error was harmless beyond a reasonable doubt, Sargent is not entitled to habeas relief on this ground.

### B. Co-defendant's Transcript

Prior to his trial Sargent requested a copy of the transcript of the trial of his co-defendant, Albert Norwood. Norwood, who owned the home in which the shooting occurred and was present when James was shot, was tried and convicted of second degree murder in October 1983, approximately five months prior to Sargent's trial.

In November 1983 Sargent's attorney requested a transcript of the Norwood trial from the court reporters who had taken the record. Sargent was informed that the transcript could not be typed in time for Sargent's trial, but that it could be dictated at an expedited rate. Apparently unsatisfied with this response, Sargent filed a motion requesting the trial judge to compel the court reporters to type the transcript. After a hearing on the matter the trial judge denied the motion. On appeal, the Missouri Court of Appeals held that Sargent's right to equal protection was not violated because the motion was denied "on grounds other than indigency." *State v. Sargent*, 702 S.W.2d at 883. The court further held that the trial court did not abuse its discretion when it refused to order a transcript because the order would have unduly burdened the state's judicial system and unnecessarily delayed Sargent's trial for as long as one year. *Id.*

In his petition for a writ of habeas corpus and now on appeal, Sargent raises essentially the same issues—i.e. that his equal protection and due process rights were violated by the trial court's failure to compel the court reporter to transcribe Norwood's trial. The district court found that Sargent's equal protection argument was meritless because the transcript would not have been available even if Sargent was not indigent. It was impossible for the court reporter to dictate and type the transcript in time for Sargent's trial. Because the transcript was not "available for a price to other prisoners," Sargent's right to equal protection was not violated. *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971).

Sargent further argues that he was denied a fair trial because he could not adequately defend himself without the Norwood transcript. In *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the Supreme Court set out three factors to be considered when determining if indigent defendants have been provided "an adequate opportunity to present their claims fairly within the adversary system." *Id.* at 77, 105 S.Ct. at 1093 (quoting *Ross v. Moffitt*, 417 U.S. 600, 612, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974)). These factors are: 1) "the private interest that will be affected by the action of the State"; 2) "the governmental interest that will be affected if the safeguard is to be provided"; and 3) "the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided." *Id.*

Application of these factors to the present case reveals that Sargent was not deprived of a fair trial. Although it is clear that Sargent had a compelling interest—freedom—at stake, *id.*, 470 U.S. at 78, 105 S.Ct. at 1093, the remaining factors necessitate a conclusion that Sargent was provided a fair hearing. Had the trial court ordered the court reporter to transcribe the trial record, Sargent's trial

would have been delayed as much as one year and the reporter would have been prevented from performing other important court work. Further, we believe that the denial of the transcript was harmless in light of the overwhelming evidence of guilt. In his brief, Sargent discusses the problems caused by the lack of Norwood's trial transcript. Sargent argues that the transcript could have helped him impeach the testimony of Captain West and the informant. He fails to note, however, that he was able to impeach West by calling the reporter to the witness stand and having her read portions of the Norwood trial. Finally, because the informant did not testify in person at Sargent's trial we fail to see how he was prejudiced by the lack of a transcript.

Sargent argues that having access to the court reporter's notes is not an effective alternative to a transcript, citing *Britt*, 404 U.S. 226, 92 S.Ct. 431, and *Turner v. Malley*, 613 F.2d 264 (10 Cir.1979). These cases involve a defendant's right to a transcript of prior proceedings in his *own* case, not a co-defendant's case. In these cases the value of the transcript to the defendant was presumed to be high. *Britt*, 404 U.S. at 228, 92 S.Ct. at 434. Such a presumption, however, is absent in the present case. It is only through application of the *Ake* factors that we determine if the transcript must be provided. The fact that the court reporter's notes were inadequate in *Turner* does not mandate a similar conclusion in this case because the value of the transcript in this case is far less than the presumed value in *Turner*.

Because neither Sargent's due process nor equal protection rights were violated, he is not entitled to habeas relief on these grounds.

### C. Other Crimes Evidence

At trial the state was allowed to introduce evidence showing that the weapons seized at Sargent's home were stolen from a St. Louis gun shop two months earlier. The owner of the gun shop testified that the guns belonged to him and produced records containing the guns' serial num-

bers. The trial court found that the evidence was admissible to prove motive for Sargent's failure to respond to the officers' request to allow execution of the search warrant. Sargent argues that this evidence resulted in the denial of a fair trial, citing Fed.R.Evid. 404(b) which disallows evidence of other crimes if offered to prove character. Whether Rule 404(b) was violated is not controlling, however, because Sargent was convicted in state, not federal, court. As further support, Sargent points us to the decision of the Second Circuit in *United States v. Cote*, 744 F.2d 913 (2nd Cir.1984). In *Cote* the court found that exposing the jury to irrelevant evidence concerning stolen firearms in which defendant was not involved constituted reversible error. Sargent fails to note, however, that *Cote* was a direct appeal from a conviction of violating a federal statute. It was not an appeal from a denial of habeas relief. Further, in this case Sargent was in possession of stolen firearms.

■ It is a well-settled principle that in order to establish a due process violation, a habeas petitioner "must prove that the asserted error was so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived him of fundamental fairness." *Manning–El v. Wyrick*, 738 F.2d 321, 323 (8th Cir.), *cert. denied*, 469 U.S. 919, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984). In the present case Sargent argues that the evidence was irrelevant and highly prejudicial, but he has not shown that the error, if any, was so prejudicial or of such magnitude as to fatally infect the trial. Accordingly, Sargent is not entitled to relief on the issue.

### D. Destruction of Evidence

One of Sargent's theories in this case is that the bullet he fired at James missed its intended mark and that James was struck by a bullet fired by one of his fellow officers. Sargent argues that due process was violated when the state destroyed two pieces of evidence which he contends would have bolstered this theory. We will discuss each item separately.

At Sargent's request certain pieces of woodwork were removed from his residence and examined for bullet holes. One bullet hole was found and the state's ballistics expert determined that it had been made by a .38 caliber bullet. Unfortunately, the testing altered the hole, making it impossible for Sargent to conduct his own tests. Sargent argues that the bullet hole was exculpatory because uncontroverted evidence established that he fired only one shot, and therefore, if more than one .22 caliber bullet was found it was possible that James had been shot by another police officer. Because the hole was altered, he was unable to produce an expert to counter the opinion offered by the state's ballistics expert, Sargent argues.

In criminal prosecutions the state has a duty to preserve "evidence that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984). Whether the destruction of evidence violates due process is determined by weighing three factors: first, whether the state acted in good faith rather than "in a calculated effort to circumvent the disclosure requirements"; second, whether the evidence "possess[ed] an exculpatory value that was apparent before the evidence was destroyed"; and third, whether the evidence was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 488–89, 104 S.Ct. at 2533–34; *United States v. Johnson*, 767 F.2d 1259, 1272 (8th Cir.1985). Application of these standards to the present case shows that due process was not violated.

Sargent has not shown anything indicating that the state destroyed the bullet hole in order to prevent him from examining it, nor has he alleged any culpable conduct on the part of the state. As to the exculpatory nature of the bullet hole, we are faced with "the treacherous task of divining the import of materials whose contents are unknown and, very often disputed." *Trombetta*, 467 U.S. at 486, 104 S.Ct. at 2533. However, because the exculpatory value of the bullet hole is at best conjectural, we are satisfied that Sargent's defense effort was not significantly hindered by his inability to examine it. Sargent's attorney was present when test holes were made in the woodwork and he was given the opportunity to cross-examine the state's ballistics expert about the type and manner of tests performed. In fact, Sargent's attorney consented to having the state test the bullet holes. Further, there was in-court testimony that a .38 caliber bullet would not fit into the hole, whereas a .22 caliber bullet would fit.[2]

Sargent offered no credible evidence that any Pine Lawn police officer was carrying a .22 caliber weapon at the time of the murder. On the other hand, the state introduced evidence that the bullet which killed James was fired by Sargent's weapon. Due to the overwhelming evidence of guilt, the remedy sought by Sargent—dismissal of the charges—is inappropriate in this case.

Next, Sargent argues that he was denied a fair trial because several months after the shooting the state repaired and painted over a scratch in the fender of the police car which had been parked on the street in front of his residence at the time of the murder. Sargent argues that the bullet he fired at James missed its mark, passed through the open door, and struck the fender of the car parked outside.[3] Both the Missouri Court of Appeals and the United States District Court found that the scratch on the fender had no exculpatory value because it existed prior to the shooting and because the state's ballistic expert determined that it had not been caused by

---

2. The state's ballistics expert testified that the elastic nature of the wood resulted in a hole smaller than the bullet which caused it. Of course, the jury was free to disregard this testimony and find that a .38 caliber bullet would not fit in the hole because the hole had in fact been made by a .22 caliber bullet.

3. The state trial court characterized Sargent's argument as ludicrous and we are inclined to agree.

a bullet. After reviewing the record we agree that the scratch had no exculpatory value. When seeking habeas relief, the burden is on the petitioner to prove that his rights have been violated. Speculation and conjecture will not satisfy this burden.

### E. Confrontation

Finally, Sargent argues that his Sixth Amendment right of confrontation was violated when a Pine Lawn police officer was allowed to testify that he heard a fellow officer announce "Police, open up" before the officers entered the residence.

 The statement was offered to prove that an announcement was made, not that the people at the door were police officers. Therefore, it is not hearsay. Sargent had the opportunity to cross-examine the officer who testified that he heard the announcement. Thus, Sargent's right of confrontation was not violated.

### III. CONCLUSION

Having examined the record before us in light of the arguments of the parties we conclude that Sargent has presented no grounds for habeas relief. Accordingly, the order of the district court is affirmed.