**UNITED STATES of America, Appellee,**

**v.**

**Joseph Edmund BEAULIEAU, a/k/a Ed Beaulieau and Thomas Townsend, Appellants.**

**Nos. 590, 859, Dockets 91–1290, 91–1572.**

United States Court of Appeals, Second Circuit.

Argued Jan. 28, 1992.

Decided March 5, 1992.

Robert K. Andres, Burlington, Vt. (Blodgett, Watts & Volk on the brief), for appellant Beaulieau.

David Watts, Burlington, Vt., for appellant Townsend.

John P. Tavana, Asst. U.S. Atty., Burlington, Vt. (Charles A. Caruso, U.S. Atty., and David V. Kirby, Asst. U.S. Atty. on the brief), for appellees.

Before: TIMBERS, WINTER and PRATT, Circuit Judges.

TIMBERS, Circuit Judge:

Appellants Beaulieau and Townsend appeal from their narcotics convictions entered on their pleas of guilty in the District of Vermont, Franklin S. Billings, Jr., *Chief District Judge.* Their appeals bring up for review their sentences imposed pursuant to the United States Sentencing Guidelines.

Beaulieau contends that during sentencing Judge Billings improperly attributed to him the possession and distribution of 500 to 2000 grams of cocaine. Since we find that the court did not err in calculating Beaulieau's base offense level, we affirm his conviction and sentence.

Townsend asserts two contentions on appeal. First, he contends that the court erred in classifying him as a leader or organizer of the conspiracy to distribute cocaine. We disagree with Townsend in this respect; so we affirm the court on this point. Second, Townsend contends that, in calculating his criminal history category, the court improperly considered a prior 1980 burglary conviction which had been sealed pursuant to a Vermont state law. We agree with Townsend's contention in this respect; so we vacate his sentence and remand his case to the district court for the limited purpose of resentencing him in accordance with this opinion.

## I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

On February 19, 1990, a confidential informant (the CI) contacted Detective Roger Marcoux of the Drug Enforcement Agency/Vermont Drug Task Force and informed him that Beaulieau was selling cocaine from his house at 99 Maple Street, Essex Junction, Vermont. The Beaulieau residence is located within 1000 feet of the Albert D. Lawton Intermediate School. The CI told Marcoux that Beaulieau's "source of supply" was known to him only as "Tom". Later that day, Marcoux, posing as a potential buyer, contacted Beaulieau to negotiate the sale of ⅛ to ¼ of an ounce of cocaine. During this initial meeting, Beaulieau told Marcoux that upon request he could provide 4 to 8 ounces of cocaine bi-weekly at a price of $1400 per ounce. Marcoux agreed to return on February 22 to purchase both ⅛ and ¼ ounces of cocaine.

On February 22, Marcoux returned to the Maple Street house and purchased 27.7 grams (approximately one ounce) of cocaine. At that time, Beaulieau told Marcoux that he could supply him with additional cocaine "within the half-hour". The two also discussed arrangements for a subsequent 4 ounce transaction. Beaulieau told Marcoux that a transaction of that size would require an advance payment. When Marcoux refused to "front" the required amount, Beaulieau stated that he would negotiate other arrangements with his "source of supply". During these negotiations, DEA agents, conducting surveillance, saw Townsend enter the house. The

agents did not see Townsend leave. Immediately following the purchase, Marcoux left the house.

On February 26, Marcoux returned to the Maple Street house to negotiate further the purchase of 4 ounces of cocaine. Initially, Beaulieau asked Marcoux if he was interested in the immediate purchase of one ounce of cocaine. When Marcoux said, "No", the two resumed negotiation over the 4 ounce quantity. They agreed that Marcoux would return to the Maple Street house on February 28 to purchase three ounces of cocaine. This was the largest quantity of cocaine that Beaulieau and his "source of supply" would sell without an advance from Marcoux. Prior to Marcoux's arrival, the agents saw Townsend arrive. He left with Beaulieau later that evening.

On February 28, Marcoux returned to the Maple Street house to purchase the three ounces of cocaine. At that time, Beaulieau told Marcoux that his "source of supply" could offer only 2 ounces, since he had sold the remainder at Johnson State College over the weekend. Beaulieau and Marcoux left the house to call the "source of supply" from a local pay phone. During the phone call, the "source of supply" told Beaulieau that he had sold all of the cocaine except four "eightballs" (approximately ½ ounce of cocaine). Visibly angered, Beaulieau drove with Marcoux to the Mapleleaf Apartments where the "source of supply" resided. The apartments were located within 1000 feet of the Essex Elementary School. Beaulieau entered the apartment alone to discuss the available quantity and price per ounce. He returned with the four "eightballs" which Marcoux purchased for $900.

Responding to Marcoux's interest in purchasing 4 ounces bi-weekly, Beaulieau told Marcoux that his "source of supply" would be travelling to New York City to purchase 10 ounces of cocaine for resale. The "source of supply" was scheduled to return to Beaulieau's house on March 5, when Marcoux could purchase the 4 ounces he wanted. Beaulieau also told Marcoux that he personally sold 2 ounces of cocaine per week, but that he anticipated that 4 ounces could be made available for Marcoux every weekend.

Early on the morning of March 5, DEA investigators saw Townsend arrive at Essex Junction on an Amtrak train from New York City. The agents followed him to Beaulieau's Maple Street house, where Townsend remained for the day. That afternoon, Marcoux went to Beaulieau's house, where he was introduced to Townsend. At that time, Townsend was in an upstairs bedroom with a triple beam scale, a device often used to weigh drugs for distribution. Beside him on the floor were four individually wrapped bags of cocaine. An additional 1½ ounces of cocaine was spread out on a marble slab. Townsend told Marcoux that he had an extra 1½ ounces of cocaine available for sale, but Marcoux declined to buy it.

After this meeting, Marcoux left the house to obtain $5,600 to pay for the 4 ounces. Upon his return, Beaulieau handed Marcoux a paper bag containing four individually wrapped bags of cocaine for which Marcoux paid $5,600. When Beaulieau began counting the money, he was arrested by DEA agents. The agents arrested Townsend in another part of the house. They found an additional 4½ ounces of cocaine in Townsend's jacket pocket and 1½ ounces in the house. This brought to 10 ounces the total amount of cocaine sold or obtained at the time of the arrests on March 5. Townsend had $2,600 in cash at the time of his arrest.

In his post-arrest statement, Beaulieau stated that during the previous four weeks, Townsend was making regular trips to New York to purchase cocaine. Each time, Townsend returned with 4 to 5 ounces of cocaine, which he brought to the Maple Street house. Beaulieau also stated that Townsend had sold cocaine from the Maple Street house on March 5, and that Beaulieau's own wife had sold quantities of cocaine to various individuals before Marcoux's arrival on that day. Townsend consented to a search of his apartment, which yielded 60–70 grams of cocaine, an unde-

termined quantity of marijuana, and assorted drug distribution paraphernalia.

Both Beaulieau and Townsend were indicted and pled guilty to the following offenses:

Beaulieau pled guilty to distribution of cocaine within 1000 feet of two public elementary schools, in violation of 21 U.S.C. §§ 841(a) and 845a (1988). Townsend pled guilty to conspiracy to distribute cocaine and distribution of cocaine within 1000 feet of a public elementary school, in violation of 21 U.S.C. §§ 846, 841(a) and 845a (1988).

All remaining charges against appellants subsequently were dismissed on motion of the government.

Presentence reports for Beaulieau and Townsend recommended a base offense level of 26, predicated on a total quantity of cocaine between 500 grams and 2000 grams. The reports recommended that each man receive a two level upward adjustment because the sales took place in protected areas. Each report recommended a two level downward adjustment for acceptance of responsibility.

Based on an offense level of 26 and a criminal history category of II, Beaulieau's sentencing range under the guidelines was 70 to 87 months. The court imposed a 75–month term (6.25 years) of incarceration, to be followed by 6 years of supervised release. We find no merit in Beaulieau's contention that the court improperly attributed to him the sale of an amount of cocaine between 500 and 2000 grams. We affirm his conviction and sentence.

At the sentencing of Townsend, the court imposed an additional two-level increase for serving in a leadership role, since he acted as Beaulieau's source of supply. His adjusted offense level was 28. His presentence report recommended that his criminal history category be IV, in view of a 1980 burglary conviction, three misdemeanor convictions, and a two-point increase because the sale of cocaine took place while he was on probation. This resulted in a guideline range of 110 to 137 months. The court imposed a 120 months term (10 years) of incarceration to be followed by 6 years

of supervised release. We reject Townsend's contention that he was found improperly to have served in a leadership role. We do find merit, however, in his contention that the court improperly considered a prior 1980 burglary conviction which had been sealed pursuant to a Vermont state juvenile law. We vacate Townsend's sentence and remand his case to the district court for the limited purpose of resentencing him in accordance with this opinion.

## II.

We turn first to Beaulieau's contention that the district court erred in attributing to him the distribution of 500 to 2000 grams of cocaine. This translates to roughly 17½ to 70½ ounces. Beaulieau contends that his offense level under the guidelines should contemplate only the quantities of cocaine *actually sold* to Marcoux, that is, 5½ ounces (from sales on February 22 (1 ounce), on February 28 (½ ounce), and on March 5 (4 ounces)). We disagree.

With respect to narcotics offenses, the guidelines establish varying offense levels depending on the quantity of drugs involved. U.S.S.G. § 2D1.1. When the amount of drugs seized does not reflect the scale of the offense, the sentencing judge is required to approximate the quantity of the controlled substance. U.S.S.G. § 2D1.4, comment (n. 2). For sentencing purposes, "quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3, comment (backg'd); *United States v. Vazzano*, 906 F.2d 879, 882 (2 Cir.1990); *United States v. Schaper*, 903 F.2d 891, 893, 897–98 (2 Cir.1990); *United States v. Copeland*, 902 F.2d 1046, 1048 (2 Cir.1990). For Beaulieau, that scheme or plan included distributing cocaine both alone and in conjunction with Townsend.

In calculating the base offense level, the court's decision to include those

sales that were made prior to Marcoux's contact with Beaulieau, even though those sales were made to different parties, was not clearly erroneous. *United States v. Perdomo*, 927 F.2d 111, 114 (2 Cir.1991) (sale of cocaine is part of same plan even though other parties were involved and defendant's own *modus operandi* was different). The district court had ample evidence from which to conclude that Beaulieau had been involved in sales of cocaine prior to his initial meeting with Marcoux. That evidence included Beaulieau's admission that he sold approximately 2 ounces per week, and the CI's assertion that he saw 8 to 10 ounces of cocaine in Beaulieau's possession before the investigation began.

■ The court's decision to attribute to Beaulieau the 6 additional ounces found in the Maple Street house during the arrests on March 5 was not clearly erroneous. *Vazzano, supra*, 906 F.2d at 883. The guidelines provide that all acts "committed *or aided and abetted* by the defendant" are included in the calculation of the proper offense level. U.S.S.G. § 1B1.3(a)(1) (emphasis added); *United States v. Paulino*, 873 F.2d 23, 25 (2 Cir.1989) (per curiam); *United States v. Guerrero*, 863 F.2d 245, 248–50 (2 Cir.1988).

■ For sentencing purposes, the court's findings that Beaulieau conspired with Townsend in a scheme to distribute cocaine and that Beaulieau had knowledge of Townsend's activities in carrying out his scheme, were supported by a preponderance of the evidence. *United States v. Guerra*, 888 F.2d 247 (2 Cir.1989), *cert. denied*, 494 U.S. 1090, 110 S.Ct. 1833, 108 L.Ed.2d 961 (1990). Beaulieau consistently referred to Townsend as his "source of supply". Beaulieau stated that Townsend weighed, packaged and actually distributed the cocaine from Beaulieau's Maple Street house. Beaulieau introduced Marcoux to Townsend. Beaulieau knew of Townsend's cocaine sales to students at Johnson State College. Beaulieau knew the details of Townsend's trips to New York City to purchase additional quantities of cocaine for sale, which Townsend distributed from Beaulieau's house. Based on this information, the district court could infer that Beaulieau had knowledge of Townsend's activities, and that Beaulieau actually worked with Townsend to sell greater quantities of cocaine. The court properly attributed to Beaulieau at the very least the 6 ounces found in his house and on Townsend's person on March 5. *Cf. Copeland, supra*, 902 F.2d at 1050 (attributing sale of greater amount of heroin to "steerer" for sentencing purposes).

■ Finally, the court properly considered Beaulieau's promises to Marcoux to supply greater quantities of cocaine in the future. U.S.S.G. § 2D1.4, comment (n. 1) ("[i]f the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation ... shall be used to calculate the applicable amount"). On at least one occasion, Beaulieau promised to deliver 4 ounce quantities of cocaine on a bi-weekly basis. On February 22, Beaulieau offered to supply additional cocaine "within the half-hour", although Marcoux declined the offer. On February 28, Marcoux hoped to purchase, and Beaulieau promised to deliver, 3 to 4 ounces of cocaine. That rather large sale was thwarted only by Townsend's inability to produce such a quantity. The court reasonably inferred that Beaulieau's promises constituted more than just "puffing". *Vazzano, supra*, 906 F.2d at 884.

In light of this information, we hold that the district court did not err in finding, based on a preponderance of the evidence, that Beaulieau's base offense level should be premised on a quantity of cocaine greater than 500 grams.

### III.

We turn next to Townsend's contention that the district court erred in characterizing him as a leader or organizer of the offense for sentencing purposes. U.S.S.G. § 3B1.1(c). Whether a defendant is considered a leader depends upon the degree of discretion exercised by him, the nature and degree of his participation in planning or organizing the offense, and the degree

of control and authority exercised over the other members of the conspiracy. *Id.*, comment (n. 3).

■ We hold that the district court's assessment of Townsend's role in the offense was not clearly erroneous. *United States v. Jacobo,* 934 F.2d 411, 418 (2 Cir.1991). Townsend was Beaulieau's source of supply for all cocaine sold to Marcoux. Townsend chose to sell to Johnson State College buyers cocaine that was already committed for sale to Marcoux. The amount of cocaine available for sale directly depended on the timing of Townsend's trips to New York. Townsend set the price for the cocaine sold to Marcoux. On one occasion Beaulieau told Marcoux that he would confirm with his "source of supply" that the sale price was $1400 per ounce. Townsend approved alternate arrangements when Marcoux refused to "front" Beaulieau the money for a large, multi-ounce purchase. Townsend was responsible for weighing and packaging the cocaine, including those packages sold to Marcoux on March 5. Even though Townsend never sold the cocaine directly to Marcoux, the court properly found that he was an organizer of the offense, adjusting his offense level accordingly.

### IV.

This brings us to Townsend's contention that the district court improperly considered his prior burglary conviction which had been sealed pursuant to a Vermont state juvenile statute. 33 V.S.A. § 665 (1981). Under that statute, upon satisfaction of certain criteria, the court may seal all files and records of a prior juvenile conviction either on the child's motion or on motion of the court. The statute provides that, after the file is sealed, "the proceedings in the matter under this act shall be considered never to have occurred, all index references thereto shall be deleted, and the person, the court, and law enforcement officers and departments shall reply to any request for information that no record exists with respect to such person upon inquiry in any matter." *Id.* § 665(c). Town-

send's 1980 conviction for burglary was ordered sealed under this statute.

Contrary to the statute, however, all references to that conviction were not deleted. Consequently, the probation officer who prepared Townsend's presentence report discovered the references to the prior conviction, and used that prior conviction in calculating his criminal history category. Upon the recommendation of the presentence report, the district court included the conviction in the calculation of Townsend's criminal history category. Townsend's criminal history total included one point for each of three misdemeanor convictions, two points because the sale of cocaine occurred while Townsend was on probation, and three points for the 1980 conviction.

■ We hold that the court improperly included the 1980 conviction in calculating Townsend's criminal history category. The guidelines require that a sentencing court take into consideration a defendant's past criminal history by establishing rules for calculating a criminal history category. U.S.S.G. §§ 4A1.1, 4A1.2. In calculating the criminal history category, the guidelines expressly state that "[s]entences for expunged convictions are not counted, but may be considered under § 4A1.3 (Adequacy of Criminal History Category)." U.S.S.G. § 4A1.2(j).

The guidelines do not define expressly the term "expunged". There is no authority in this Circuit for deciding what prior convictions have been "expunged" from a defendant's prior criminal history. In the Ninth Circuit, a prior conviction that is automatically "set aside" pursuant to a state statute, once a defendant completes a particular probationary period is deemed "expunged" from his record, and is not to be included in the calculation of a criminal history category. *United States v. Hidalgo,* 932 F.2d 805, 807 (9 Cir.1991) (interpretation of Cal.Welf. & Inst.Code § 1772(a)). That court reasoned that, once a verdict is "set aside", the conviction no longer exists, and "[t]herefore, there is nothing to count for purposes of calculating defendant's criminal history." *Id.* Similarly, the Third Circuit examined a Pennsylvania juvenile

law that allowed a minor to move to expunge records of his juvenile delinquency conviction upon satisfaction of certain criteria. *United States v. Bucaro*, 898 F.2d 368 (3 Cir.1990) (examining 18 Pa.Cons.Stat. Ann. § 9123(a) (Purdon Supp.1989)). In *Bucaro*, the court held that, simply because a defendant *could* have moved to expunge a prior juvenile conviction, yet chose not to do so, the prior conviction was properly included in calculating the defendant's criminal history category. The court stated: "[Moving to expunge his record] normally would have prevented the prior adjudications from being considered during sentencing .... However, [he] did not move for expungement, and the juvenile adjudications remained on his record at the time of sentencing." *Id.* at 372 n. 6. *See also United States v. Ruiz*, 734 F.Supp. 312 (N.D.Ill.1990) (prior conviction included in criminal history because Ruiz failed to take necessary steps to expunge it from his record).

In the instant case, Townsend took all of the required steps to remove his prior burglary conviction from his record by moving to have that record sealed. The language of the statute indicates that the process of sealing was intended wholly to eliminate any trace of the past proceeding. Indeed, but for the clerical error which resulted in the failure to remove all cross references to the prior conviction, neither the probation officer nor the district court would have learned of the prior conviction. In view of what we believe to be the intent of the legislature wholly to erase Townsend's prior conviction from Vermont's criminal records, we hold that the 1980 conviction should have been deemed "expunged". We vacate his sentence and remand his case to the district court for the limited purpose of resentencing him in accordance with this opinion.

### V.

To summarize:

We affirm the convictions of both appellants.

With respect to Beaulieau's contention that the district court improperly attributed

500 to 2000 grams of cocaine to him, we hold it has no merit. We affirm his sentence.

With respect to Townsend, we hold that the district court did not err in concluding that he was an organizer of the offense for which he was convicted. We hold, however, that in calculating Townsend's criminal history category, the court improperly considered a prior 1980 conviction which had been sealed pursuant to state law. We therefore vacate his sentence and remand his case to the district court for resentencing in accordance with this opinion.

Affirmed in part; vacated and remanded in part.