**UNITED STATES of America, Appellee,**

v.

**Manuel CASTILLO and Juan Fernandez, Defendants–Appellants.**

No. 7, Docket 92–1279.

United States Court of Appeals, Second Circuit.

Argued Sept. 15, 1993.

Decided Jan. 28, 1994.

David L. Lewis, New York City (Lewis & Fiore, New York City, of counsel), for Defendant-Appellant Manuel Castillo.

Jonathan Rosenberg, Assistant United States Attorney for the Southern District of New York, New York City (Otto G. Obermaier, United States Attorney for the Southern District of New York, John W. Auchincloss II, Assistant United States Attorney for the Southern District of New York, New York City, of counsel), for Appellee.

Before: LUMBARD, OAKES, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant Manuel Castillo appeals from a judgement of conviction entered May 19, 1992 pursuant to a jury verdict in

the United States District Court for the Southern District of New York, Shirley Wohl Kram, *Judge*.[1] Castillo was found guilty of using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c).

Castillo contends that he was wrongfully deprived of the right to testify in his own defense, and that his trial counsel's alleged refusal to permit Castillo to testify and failure to rectify the error by moving for a new trial pursuant to Fed.R.Crim.P. 33 constituted ineffective assistance of counsel. Castillo also argues that the trial judge (1) impermissibly admitted hearsay evidence against him, (2) incorrectly charged the jury concerning reasonable doubt, and (3) erroneously sentenced him as a supervisor.

We affirm.

## Background

On July 10, 1989, Castillo was arrested in a "buy and bust" operation conducted by the Manhattan North Tactical Narcotics Team of the New York City Police Department. He was originally convicted by a jury of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, distribution of cocaine within 1,000 feet of an elementary school in violation of 21 U.S.C. §§ 812, 841(a), 841(b)(1)(C), and 845a(a) [now § 860(a) ] and 18 U.S.C. § 2, possession of cocaine with intent to distribute within 1,000 feet of an elementary school in violation of 21 U.S.C. §§ 812, 841(a), 841(b)(1)(C), and 845a(a) and 18 U.S.C. § 2, and the use and carrying of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

On the initial appeal, this court reversed and remanded for resentencing on the first three counts because the sentences of Castillo and Fernandez had been improperly enhanced for assault of an official victim pursuant to USSG § 3A1.2(b), and for retrial on the firearms count because prejudicial expert testimony had been admitted regarding that charge. *See United States v. Castillo*, 924 F.2d 1227 (2d Cir.1991). A detailed narrative of the facts in this case is set forth in our

prior opinion, *id.* at 1228–30, familiarity with which is assumed.

After a retrial, Castillo was again convicted of the firearms charge. Judge Kram sentenced Castillo on all four convictions to a total of eighty-four months imprisonment to be followed by six years supervised release, and a mandatory $200 special assessment. This sentence reflected a two level enhancement of the base offense level, pursuant to USSG § 3B1.1(c), for acting in a supervisory role in the commission of the crimes.

This appeal followed.

## Discussion

Castillo contends on appeal that: (1) he was denied his fundamental right to testify because his counsel's failure to call Castillo as a witness resulted in an unknowing and involuntary waiver of Castillo's right to testify; (2) he was denied his right to effective assistance of counsel because his attorney (a) did not call him to testify and (b) subsequently failed to make a motion for a new trial under Fed.R.Crim.P. 33 within the prescribed seven day period; (3) the district court impermissibly permitted hearsay testimony concerning the presence of a firearm, and failed to cure the asserted defect when it gave an inadequate limiting instruction; (4) the court erroneously departed from the traditional reasonable doubt charge, thereby impermissibly shifting the burden of proof to Castillo; and (5) in sentencing Castillo, the court incorrectly enhanced his base offense calculation by two levels pursuant to USSG § 3B1.1(c) for acting in a supervisory capacity.

We consider these arguments in turn.

### A. *Castillo's Right to Testify.*

■ Castillo contends that counsel's failure to call him as a witness in his own defense resulted in an involuntary waiver of his right to testify because he was unaware that he had such a right. Castillo asserts, in an affidavit submitted in support of his belated motion for a new trial, *see infra* Part B of this Discussion, that although he did not

1. Defendant-appellant Juan Fernandez withdrew, but later reinstated, his appeal, which as a result will be heard and decided separately from Castillo's.

testify at his original trial, he told his counsel during the second trial that he wanted to testify but his counsel refused to call him to the stand, and Castillo believed that he had no recourse at that juncture.

The record is clear, however, that Castillo had been advised at his first trial, in open court, regarding his right to testify. Accordingly, accepting as true, *arguendo*, the assertions in Castillo's affidavit regarding his conversations with his counsel at the second trial,[2] he cannot prevail on this issue. *See United States v. McMeans*, 927 F.2d 162, 163 (4th Cir.1991) (per curiam) (record from first trial shows that defendant knew of his right to testify, thus "his failure to testify in his second trial cannot be the product of ignorance"); cf. *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir.1991) ("The defendant need not protest and the judge need not question him, but in a subsequent collateral attack on the conviction the defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand.").

### B. *Castillo's Motion for a New Trial.*

After his retrial, Castillo retained new counsel and moved for a new trial pursuant to Fed.R.Crim.P. 33. Rule 33 requires such motions to be made within seven days after verdict except in the case of newly discovered evidence; Castillo's motion was made outside the seven-day limit. Castillo argues that this limitation should not bar his motion for two reasons. First, he contends that his post-trial affidavit concerning counsel's alleged failure to allow him to testify was "newly discovered evidence" within the meaning of Rule 33 that allowed his motion for a new trial to be made up to two years after entry of judgment. Second, Castillo argues that his original counsel's failure to file a motion for a new trial within the seven day limit denied Castillo the effective assistance of counsel.

We ruled in *United States v. Dukes*, 727 F.2d 34, 39 (2d Cir.1984), however, that ineffective assistance claims do not present new evidence within the meaning of Rule 33. Furthermore, it can hardly constitute ineffective assistance to fail to present a claim via a Rule 33 motion that, as we have just held, is without merit.

### C. *The Admission of Hearsay.*

Shawn Johnson, an undercover policeman, made the cocaine purchase from Castillo and Fernandez that led to their arrest. Castillo argues that the court improperly admitted hearsay testimony concerning statements made by Johnson. Johnson testified without objection that immediately following the drug purchase, he reported to his commanding officer, Lieutenant Kracji, that Fernandez had displayed a handgun while Castillo presented Johnson with cocaine that he was required to snort before being allowed to leave the apartment in which the drug purchase took place. *See Castillo*, 924 F.2d at 1229. The court also admitted the testimony of Kracji and another officer concerning Johnson's statements to Kracji. Castillo contends on appeal, as he did before the district court, that the testimony of Kracji and the other officer was inadmissible hearsay.

Fed.R.Evid. 801(d)(1)(B) provides that testimony is not hearsay if "[t]he declarant testifies at the trial ... and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge of recent fabrication or improper influence or motive." The prosecution concedes in its brief that Rule 801(d)(1)(B) is inapplicable because "if Johnson had a motive to fabricate the story concerning being forced to ingest cocaine, he presumably had that motive when he was debriefed by his superior."

The prosecution argues, however, that the testimony was not offered for the truth of the matter asserted, and was not admitted as a prior consistent statement under Rule

---

**2.** Castillo's counsel at the second trial reported to the court that he had successfully persuaded Castillo not to testify.

801(d)(1)(B). Rather, the government contends, the testimony was offered to rehabilitate Johnson's credibility, and the court did not abuse its discretion in accepting the testimony for this limited purpose. *See United States v. Colon*, 835 F.2d 27, 31 (2d Cir.1987), *cert. denied*, 485 U.S. 980, 108 S.Ct. 1279, 99 L.Ed.2d 490 (1988); *United States v. Khan*, 821 F.2d 90, 94 (2d Cir.1987); *United States v. Brennan*, 798 F.2d 581, 587–89 (2d Cir. 1986); *United States v. Pierre*, 781 F.2d 329, 333–34 (2d Cir.1986); Jack B. Weinstein & Margaret A. Berger, 4 *Weinstein's Evidence* ¶ 801(d)(1)(B)[01], at 801–198–99 & n. 15 (1992).

Throughout the trial, defense counsel sought to discredit Johnson by arguing that Johnson lied about the presence of a gun to justify his snorting cocaine during the drug purchase. Part of this strategy involved contrasting Johnson's testimony that immediately after the buy he told Kracji that he "had been forced to ingest cocaine at gunpoint," with his testimony that the gun was displayed but never removed from Fernandez' waistband. The defense maintained that these statements were contradictory.

■ In *Pierre*, we held that:

When the prior [consistent] statement tends to cast doubt on whether the prior inconsistent statement was made or on whether the impeaching statement is really inconsistent with the trial testimony, its use for rehabilitation purposes is within the sound discretion of the judge. Such use is also permissible when the consistent statement will amplify or clarify the allegedly inconsistent statement. It matters not whether such use is deemed a permissible type of rehabilitation or only an invocation of the principle of completeness, though not a precise use of Rule 106.

*Id.* at 333. And as we explained in *Brennan*, the standard for admitting hearsay under this exception is less onerous than the standard used to determine whether testimony qualifies as nonhearsay under Fed.R.Evid. 801(d)(1)(B). 798 F.2d at 587 (citing *United States v. Rubin*, 609 F.2d 51, 66–70 (2d Cir. 1979) (Friendly, J., concurring), *aff'd on grant of cert. limited to another issue*, 449

U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)).

In determining whether the proffered hearsay falls within the *Pierre* exception, the inquiry is "whether the particular consistent statement sought to be used has some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony." *Pierre*, 781 F.2d at 331. Castillo argues that the hearsay admitted in the instant case was introduced solely to bolster Johnson's trial testimony through mere repetition of Johnson's statements concerning the presence of a gun in Fernandez' waistband.

When Castillo sought to impeach Johnson's credibility by characterizing the "gun in the waistband" statement as contradictory to the "at gunpoint" statement, it was within Judge Kram's discretion to allow the prosecution to proffer hearsay testimony to aid the jury in determining whether the two statements meant the same thing—that Johnson's use of the phrase "at gunpoint" was shorthand for the presence of a gun in Fernandez' waistband. The hearsay was admitted for the limited purpose of clarifying the apparent contradiction brought out during cross-examination of Johnson. Under *Pierre*, this is a permissible rehabilitative use of hearsay. *Id.* at 331, 333.

■ Castillo also argues, and our dissenting colleague agrees, that the prosecutor abrogated the court's limiting instructions by improperly arguing the truth of the hearsay testimony during his closing and rebuttal arguments. However, the prosecutor invoked the hearsay for the permissible purpose of rehabilitating Johnson's credibility. Immediately following defense counsel's objection to his closing argument, the prosecutor stated to the jury that he was not arguing that the substance of the hearsay testimony be accepted as true, explaining that ". . . the fact that [Johnson] makes the statement at that point, that is something that you can consider as the judge will instruct you."

The dissent quotes passages from the prosecution's rebuttal argument which essentially contend, in response to the defense's wholesale assault on Johnson's credibility (as well as Kracji's), that Johnson was consistent

in his description of the events in the apartment, as *Pierre* permits. We do not regard this argument as crossing the line, especially in light of the court's subsequent instruction (echoing a prior instruction in response to a defense request) that: "I instruct you with all the authority at my command that you must consider [Johnson's statements to Kracji] only for the limited purpose for which they were received and for no other purpose."

### D. *The Reasonable Doubt Instruction.*

■ Castillo also questions the district court's reasonable doubt instruction, contending that it shifted the burden of proof to the defense. In her charge to the jury, Judge Kram stated that reasonable doubt was present if a juror "can candidly and honestly say that [he is] not satisfied of the guilt of any of the defendants, that [he does] not have an abiding conviction of any defendant's guilt." As we held in *United States v. Torres*, 901 F.2d 205, 242–43 (2d Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990), this language does not shift the burden of proof, especially when we consider the jury instruction as a whole, which in this case contained numerous declarations that the burden of proof rested with the prosecution.

During oral argument and in a post-argument letter, Castillo cited *Sullivan v. Louisiana*, —— U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), for the proposition that the "abiding conviction" language used by Judge Kram is improper. However, *Sullivan* involved a very different instruction from the one at issue here, *see id.* at ——, 113 S.Ct. at 2080 (charge essentially identical to one held unconstitutional in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam), *overruled on another ground, Estelle v. McGuire*, —— U.S. ——, —— n. 4 112 S.Ct. 475, 482 n. 4, 116 L.Ed.2d 385 (1991)), and is accordingly of no assistance to Castillo. The *Cage* instruction required the jury to have "an actual substantial doubt" giving rise to "a grave uncertainty" regarding guilt before it could find reasonable doubt necessary to acquit the defendant. *Cage*, 498 U.S. at 40, 111 S.Ct. at 329. Such an instruction lowered the prosecution's burden of proof below that required by the Due Process Clause. *Id.* at 41, 111 S.Ct. at 329. By contrast, the instruction in this case maintained the prosecution's burden of proof at a level that respects Castillo's right to due process.

### E. *The Sentencing Enhancement.*

■ Finally, Castillo claims that there was insufficient evidence for the court to enhance his sentence under USSG § 3B1.1(c) for acting in a supervisory capacity during the commission of the crimes of which he was convicted. We review enhancement pursuant to this provision for clear error. *See United States v. Beaulieau*, 959 F.2d 375, 380 (2d Cir.1992). The district court was not clearly erroneous in finding by a preponderance of the evidence that Castillo played an organizing role in the commission of the offenses of which he was convicted. Castillo weighed and packaged the cocaine sold to officer Johnson, and at the time of his arrest possessed $80 of the $90 of prerecorded money used by the officer to purchase the cocaine from Castillo and Fernandez.

### Conclusion

The judgment of the district court is affirmed.

LUMBARD, Circuit Judge, dissenting:

In my view, the hearsay testimony was not admissible; the government made impermissible use of the hearsay testimony; and the district court did not adequately instruct the jury regarding its consideration of the hearsay testimony.

Officer Johnson testified on direct examination that Fernandez had a handgun in his waistband, gripped the gun with his finger on the trigger, ordered Officer Johnson to ingest cocaine, and began to draw the gun, to the extent that Officer Johnson saw part of the gun barrel above Fernandez' waistband. Officer Johnson also testified on direct examination that he immediately met with his superior, Lieutenant Kracji, and "told him that I had made a buy and that I had been forced to ingest cocaine at gunpoint."

On cross-examination, defense counsel attacked Officer Johnson's credibility by questioning his arguably inconsistent statements that the gun remained in Fernandez' waistband, and that he told Lieutenant Kracji that he was threatened at gunpoint. On redirect, and over objection, Officer Johnson was asked where he told Lieutenant Kracji that Fernandez had the gun. Officer Johnson replied: "I'd tell him that he had the gun to the right of his navel, in his waistband." Officer Johnson was next asked, over objection, if he "ever [told] Lieutenant Kracji that the gun had been pointed" at him, to which Officer Johnson replied "No, I didn't." The government then called Lieutenant Kracji, who stated, over objections, that Officer Johnson

> said that after the buy had gone down, he attempted to leave and one man that was standing in back of him had a gun in his waistband. The other man approached him with some cocaine on a playing card and told him to snort the cocaine. When he tried to talk his way out of it, the fellow with the gun started removing it from his waistband and told him that he better snort the cocaine.

The majority holds that this hearsay was properly admitted to rehabilitate Officer Johnson after the defense attacked his credibility by raising the inconsistency between the "at gunpoint" and "in his waistband" versions of events. I disagree.

We held in *United States v. Pierre*, 781 F.2d 329 (2d Cir.1986), that a prior consistent statement that is not admissible under Fed. R.Evid. 801(d)(1)(B) is nevertheless admissible if it "has probative force bearing on credibility beyond merely showing repetition." *Id.* at 333. Admission is proper if the prior consistent statement "tends to cast doubt on whether the ... impeaching statement is really inconsistent with the trial testimony," or if it "will amplify or clarify the allegedly inconsistent statement." *Id. Pierre* took pains to distinguish *United States v. Quinto*, 582 F.2d 224 (2d Cir.1978), on the ground that the prior statement in *Quinto* "had no probative force beyond showing that the witness had at an earlier time

been consistent with his trial testimony." *Pierre*, 781 F.2d at 333.

The present case resembles *Quinto* in that the hearsay testimony had no probative force beyond showing consistency at an earlier time. Officer Johnson's direct testimony was that Fernandez had a "gun in his waistband" and "drew it enough that I could see like maybe an inch or so of the barrel." After the defense's "gunpoint" attack, the government offered Officer Johnson's prior consistent statements. Officer Johnson testified that he told Lieutenant Kracji that Fernandez had the gun "to the right of his navel, in his waistband." Lieutenant Kracji testified that Officer Johnson told him that Fernandez "had a gun in his waistband" and that when Officer Johnson tried to leave, "the fellow with the gun started removing it from his waistband."

The hearsay testimony did not serve to "clarify[ ] the apparent contradiction." Officer Johnson's and Lieutenant Kracji's hearsay merely repeated Officer Johnson's original testimony without any helpful elaboration. "At gunpoint" and "in his waistband" were not reconciled by repeating "in his waistband" a second time; if anything, repetition reinforced the inconsistency. The hearsay had no "rebutting force beyond the mere fact that the witness ha[d] repeated on a prior occasion a statement consistent with his trial testimony." *Pierre*, 781 F.2d at 331. *Pierre* does not justify admission of the hearsay.

The other cases cited by the majority are distinguishable. *United States v. Brennan*, 798 F.2d 581 (2d Cir.1986), involved a prior consistent statement that significantly fleshed out the alleged inconsistent statement. The prior consistent statement "was not used to show that [the declarant] told the same story twice." *Id.* at 589. *United States v. Colon*, 835 F.2d 27 (2d Cir.1987), cert. denied, 485 U.S. 980, 108 S.Ct. 1279, 99 L.Ed.2d 490 (1988), and *United States v. Khan*, 821 F.2d 90 (2d Cir.1987), both involved defense contentions that trial allegations were unreliable because they were not previously made, despite opportunities to do so. Prior statements were introduced to

show that the allegations had in fact been made before.

Here, defense counsel contrasted Officer Johnson's trial testimony with a prior statement that Officer Johnson himself, during his trial testimony, said he made. This situation is more like *Brennan* and *Quinto* than *Colon* and *Khan*, and the question is whether the prior consistent statement provided clarification or mere repetition. For the reasons stated earlier, it provided mere repetition and should not have been admitted.

Evidentiary errors require reversal if they have a substantial and injurious effect on the jury's verdict. *United States v. Castillo*, 924 F.2d 1227, 1233 (2d Cir.1991). I believe reversal is required in this case, just as it was on the first appeal, where we held that the government misused improperly admitted testimony of a drug enterprise expert. *Id.* at 1231–35.[1]

The error in the first trial had a substantial and injurious effect because of the inherent weakness of the government's case and the correspondingly heightened impact of the error.

> The firearm count was perhaps perceived as weak from the case's inception—no gun had ever been recovered, despite searches of appellants' persons, the apartment, the area outside the apartment windows and the vicinity of the arrest. The initial arrest report contained no mention of any weapon. Finally, there was only one witness who testified to having seen the gun, Officer Johnson.

*Id.* at 1234–35 (footnote and internal cross-reference omitted). These observations apply as well to the retrial.

Also significant in the first trial were "[t]he jury's notes to the Judge during deliberations, manifesting their recognition that, in fact, the firearm count was troubling." *Id.* at 1235. A similar observation can be made about the retrial, where the jury sent a note that the court and counsel alike found confusing, and which suggested the jury might have considered issuing separate verdicts on the drug and firearm elements of the single count.

The government's use of the hearsay for its truth compounded the substantial and injurious effect its admission had on the jury verdict. The hearsay was admitted for the limited purpose of rebutting the charge of inconsistency. The government, however, repeatedly and over objections referred to the hearsay as proof that a gun was present:

> ... I ask you to do justice by crediting the testimony of an eyewitness in this case, an eyewitness who was just a foot or two away from the gun in question. An eyewitness who is trained and experienced in identifying handguns. An eyewitness who immediately told his supervisor what he saw after he left the apartment and didn't hide it at all.

> \*   \*   \*   \*   \*   \*

> Well, if Lieutenant Kracji is a liar, then why does he say no gun was found in the apartment? ... It makes no sense for you to believe Lieutenant Kracji was lying when he tells you what Officer Johnson told him.

> ... In order to accept the argument that Officer Johnson lied, you have to find that from the moment he left the apartment, he made up a story, stuck to it and has been lying ever since.

> Not only did he perjure himself yesterday, but he lied to his supervising officer, something that could get him fired, and he lied on his reports. This is not a situation where Officer Johnson comes out of the apartment and has one story and then later on ... he then raises a new story. Yes, there was a gun. This is what he told from the moment he got out of the apartment.

> \*   \*   \*   \*   \*   \*

> If he hadn't been threatened with a gun, ladies and gentlemen, wouldn't he have

---

1. More specifically, we found that the district court improperly admitted expert testimony on easily understandable aspects of drug dealing, including the use of guns to force officers to ingest cocaine; that the government misused the improperly admitted evidence on summation; and that the errors had a substantial and injurious effect on the firearm count verdicts. *Castillo*, 924 F.2d at 1231–35.

just told the supervisor that, after all, even though he was trained, he had a ten-day training course, and he had been in an apartment before, this was still his second deal. If he had come to Lieutenant Kracji and said to him, I'm not sure whether a gun was there, but they were threatening me with something and he had his hand over here and I'm not sure, I'm not going to take any chances, do you think he would have been fired?

Come on, ladies and gentlemen, does that make any sense to you? He told Lieutenant Kracji exactly what he saw.

The jury thus was repeatedly exhorted to believe that a gun was present because Officer Johnson said so to Lieutenant Kracji. This was far beyond the purpose for which the hearsay was originally admitted: to repair the alleged inconsistency between the "at gunpoint" and "in his waistband" versions of events. The government improperly used the hearsay to bolster Officer Johnson's credibility on the ultimate issue in the case—the presence of a gun—rather than to rehabilitate him after the charge of inconsistency.

The similarities between the first trial and the retrial are telling. In both cases, the government "misuse[d] ... what was, in any event, improperly admitted testimony." *Id.* at 1234. In both cases, it became "apparent in the government's summations [that] the purpose of the testimony"—or at least *a* purpose of the testimony—"was actually to corroborate Johnson's testimony." *Id.* And in both cases, "in the wake of the Government's summation, [the] testimony could only have had such substantial and injurious effect on the jury's ... verdict[ ]" that reversal is required. *Id.* at 1233.

Finally, the district court's limiting instructions were inadequate. At first, the court gave a limiting instruction after Lieutenant Kracji's hearsay testimony: "What the witness is recounting is what was told to him. It does not indicate that what is being said is

for the truth of the statement." The court gave a similar limiting instruction with regard to the hearsay testimony of Detective Bailey, who was responsible for the search of the apartment. Detective Bailey testified on direct examination that Lieutenant Kracji told him that "the undercover was forced to ingest, by way of having a gun placed to him, or he was—a gun was used to make—to force the ingestion."[2] The court instructed the jury that

> We're having this testimony as to what this officer was told, and as I told you on the previous occasion, it's merely an indication that he was told. It's not being offered for the truth of the statement, merely the fact that this was what he was told. And as I indicated to you in an earlier statement where I gave you that limiting instruction, the same thing applies here.

A final limiting instruction was included in the jury charge:

> In this case, some of the evidence was admitted only for a very limited purpose. You may consider such evidence only for the limited purpose for which it was received. In this regard I want to call your attention to certain out-of-court statements of [Officer] Johnson which he made soon after he left the apartment which I instructed that you should only consider for the fact that such statements were made and not for the truth of the statements themselves. I instruct you with all the authority at my command that you must consider such statements only for the limited purpose for which they were received and for no other purpose.

Defense counsel participated in formulating some of these instructions, so I hesitate to question their sufficiency. But the government's use of the hearsay required effective instructions. The instructions did not sufficiently explain the permissible and impermissible uses of the hearsay in a way that

---

**2.** Detective Bailey's testimony was admitted not for its truth but for the purpose of showing that he knew to look for a gun in the apartment. Lieutenant Kracji's testimony might also have been admissible for that purpose. But the government does not suggest that was the basis for admission. And problems would remain any-

way. The prosecutor's use of the testimony on summation went far beyond—indeed, had nothing to do with—showing how the police knew to search for a gun. And the district court's limiting instruction failed to communicate the bounds of the testimony's proper use.

a lay juror could appreciate. *Cf. United States v. Siegel,* 717 F.2d 9, 18 (2d Cir.1983) (upholding admission of evidence where accompanied by a more detailed instruction). The instructions merely stated, with slight variations, that the jury "should only consider [the hearsay] for the fact that such statements were made and not for the truth of the statements themselves." Indeed, the difficulty of explaining to any jury the proper use of such testimony is in itself a reason for its exclusion.

The sole issue at retrial was whether a gun was used. No gun was ever produced. Officer Johnson's testimony was the only admissible evidence of the presence of a gun. The hearsay did not rehabilitate Officer Johnson's credibility in any permissible way. Rather, it was used improperly to bolster testimony that was at the heart of the case. The admission and use of the hearsay had a substantial and injurious effect on the verdict.

I would reverse the conviction.