UNITED STATES of America,
Appellee,

v.

Raul RIVERA, also known as "King Chappy," also known as "King Society," also known as "King Chap," Angel Luis Lugo, also known as "King

Bear," Angel Alejandro, also known as "A.A.," also known as "King Vamp," also known as "A Juvenile," and Daniel Berrios, also known as "King Danny," Defendants–Appellants,

No. 00–1831(L), 00–1832, 00–1833, 01–1022.

United States Court of Appeals, Second Circuit.

March 12, 2003.

Amy M. Attias, Law Office of Amy M. Attias, (Larry Sheehan, Law Offices of Larry Sheehan, Scarsdale, NY, Paul Rinaldo, Grossman, Levine, Rinaldo, Forest Hills, NY, Deveraux Cannick, Aiello & Cannick, Maspeth, N.Y. on the brief), Pleasantville, NY, for Appellants.

Cynthia K. Dunne, Assistant United States Attorney (James B. Comey, United States Attorney for the Southern District of New York, William C. Silverman, Assistant United States Attorney, Cathy Seibel, Assistant United States Attorney, on the brief), New York, N.Y., for Appellee.

PRESENT: Hon. ROGER J. MINER, Hon. SONIA SOTOMAYOR, and Hon. ROBERT A. KATZMANN, Circuit Judges.

*CORRECTED SUMMARY ORDER*

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 12th day of March, two thousand three.

ORDERED, ADJUDGED AND DECREED that the judgment of the district court is AFFIRMED.

Daniel Berrios, Angel Luis Lugo, Angel Alejandro, and Raul Rivera appeal from the judgment of the United States District Court for the Southern District of New York (McMahon, J.), convicting them of conspiracy to murder Efraim Torres in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5), and of murdering Efraim Torres in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) and (2), and sentencing them principally to life in prison. Alejandro and Rivera were also convicted of using a firearm in the commission of the above, in violation of 18 U.S.C. § 924(c) and (2), and sentenced consecutively to five years in prison, and Rivera was found guilty of possession with the intent to distribute five grams and more of crack cocaine, in violation of 21 U.S.C. § 812, 841(a)(1) and § 841(b)(1)(B), for which he was sentenced to ten years in prison.

Defendants, members of the "Latin Kings," a violent street gang, were convicted of conspiring to murder Efraim Torres. Torres, who was not a member of the gang, had intervened in a dispute between Latin Kings leader Hector Colon and another man, and in the process stabbed Colon. Colon, while named in the original indictment, died before this case came to trial. Defendants, members of the nascent Yonkers chapter of the Latin Kings, determined to kill Torres in retaliation. Defendants tried twice to locate Torres before finding him hiding in a friend's basement apartment, where they shot him to death in front of his wife and small children.

Defendants assert eight errors in the proceedings below. None of these arguments is persuasive.

■ First, defendants assert that the district court erred by allowing the use of an anonymous jury. Anonymous juries are permissible when there is "first, strong reason to believe that the jury needs protection and, second, reasonable precaution taken to minimize the effect that such a decision might have on the jurors' opinions of the defendants." *United States v. Thomas,* 757 F.2d 1359, 1365 (2d Cir.1985). Factors relevant to whether impanelling an anonymous jury is proper include: (1) the nature and seriousness of the charges; (2) evidence of defendants' past interference or intent to interfere with the judicial process; and (3) the potential for media attention. *United States v. Paccione,* 949 F.2d 1183, 1192 (2d Cir.1991).

We review a trial judge's decision to impanel an anonymous jury for abuse of discretion. *United States v. Thai,* 29 F.3d 785, 801 (2d Cir.1994). Here, the district court acted well within its discretion. Defendants were charged with hunting down and killing a man for publicly embarassing their gang leader. Although defendants argue that none of them had a history of jury tampering, the Latin Kings' overall disregard for the judicial process, includ-

ing their pursuit of a suspected informant, suggested that jurors might have been at risk. Defendants' claims that incarceration and penury would bar retaliatory action in the future are defeated by the Latin Kings' pledges of loyalty to jailed members.

The district court also sought to mitigate the potentially deleterious effects of an anonymous jury by instructing the jurors that their identities were hidden to shield them from the media, rather than defendants. Voir dire included a lengthy questionnaire, into which both parties had input. Such questionnaires can sufficiently enable the selection of unbiased jurors so as to preserve the constitutionality of anonymous juries. *Thai*, 29 F.3d at 801. Defendants' assertion of error in the seating of an anonymous jury therefore fails.

■ Second, defendants assert that the government knew for months before it disclosed to defendants that Juan Fontanez, a key prosecution witness, lied to the grand jury when he said he was present at Efraim Torres' murder. Defendants argue that this failure to disclose impeachment evidence violated the constitutional requirement set forth in *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which compels the government to disclose evidence favorable to an accused when such evidence is material to guilt or punishment. A *Brady* violation occurs when the government suppresses evidence that might reasonably have been expected to alter the outcome of the case. *In re United States (Coppa)*, 267 F.3d 132, 135 (2d Cir.2001).

The government's failure to disclose Fontanez's retraction in a timely manner is inexplicable. Defendants, however, ultimately learned the truth during Fontanez's direct testimony at trial, early enough to make effective use of the information. Defendants emphasized Fonta-

nez's inconsistencies in cross-examining him; in addition, they did not request an adjournment. Because the government's failure to disclose did not affect the outcome of the case, there is no *Brady* violation.

■ Third, defendants argue that the admission of an excerpt of Jose Santiago's plea allocution was error. The excerpt was admitted as a declaration against penal interest under Fed.R.Evid. 804(b)(3). We have previously held that a co-defendant's plea allocution can be admitted as a declaration against penal interest if (1) the declarant is unavailable and (2) the statement contains "particularized guarantees of trustworthiness." *United States v. Gallego*, 191 F.3d 156, 167 (2d Cir.1999). Defendants argue that Santiago was not unavailable and the excerpt of the plea allocution was inadmissible.

The district court found that Santiago was unavailable because, if called to testify, Santiago would assert his Fifth Amendment privilege not to incriminate himself. Defendants argue that Santiago lost his Fifth Amendment privilege when he pleaded guilty. The Fifth Amendment privilege is not lost upon a plea of guilty when a reasonable risk of incrimination on other charges still exists. *United States v. Rodriguez*, 706 F.2d 31, 36–37 (2d Cir.1983). The district court did not abuse its discretion in finding that such a risk remained and, therefore, Santiago could assert his Fifth Amendment privilege if called as a witness. Further, the district court's determination that Santiago was unavailable based on the government's proffer that Santiago would, in fact, assert his Fifth Amendment right if called to testify was not an abuse of discretion.

■ In addition, defendants argue that the use of only an excerpt of the plea allocution was error because defendants

did not receive a copy of the plea allocution and, therefore, could not adequately prepare a defense based on an incomplete document. Defendants contend that a transcript of the plea allocution was unavailable to them. The government provides evidence that the plea allocution was not under seal and therefore was publicly available. Thus, defendants had the opportunity to obtain a transcript of the plea allocution. Defendants' arguments that Santiago's excerpt of the plea allocution was admitted in error therefore fails.

█ Fourth, defendants challenge the district court's admission of evidence of criminal acts not charged in the indictment. Evidence of uncharged criminal conduct is admissible if it is relevant to an issue other than defendants' character under Fed.R.Evid. 404(b) and if its probative value is not substantially outweighed by the risk of prejudice to defendants under Fed.R.Evid. 403. *United States v. Livoti,* 196 F.3d 322, 326 (2d Cir.1999). Here, the evidence admitted was relevant to demonstrate the existence of a criminal enterprise as charged in the superseding indictment. *See Thai,* 29 F.3d at 812 (holding that evidence of other crimes is admissible to prove conspiracy).

The government moved for admission of twenty-four prior crimes; the district court admitted twenty-one of those crimes. Defendants argue that the admitted evidence should have been excluded under Fed.R.Evid. 403 as overly prejudicial. The district court limited the number of acts admitted against Rivera to ten and provided proper limiting instruction on the use of the evidence. This sufficed to alleviate any potential unfair prejudice. Thus, we hold that the district court did not abuse its discretion in admitting evidence of uncharged crimes.

█ Fifth, Rivera challenges the District Court's denial of his motion to suppress the drug paraphernalia seized at the time of his arrest, arguing that the search went beyond permissible limits of a protective sweep. When the police arrested Rivera in his one-room apartment in Yonkers, they swept the rest of the premises to make sure no one besides Rivera and his girlfriend were present. A large cardboard baby carriage box stood in the kitchen; when police looked they found it contained crack cocaine and the tools used for packaging crack for retail sale.

Protective sweeps, if conducted to ensure the officers' own safety, are reasonable under the Fourth Amendment. *Maryland v. Buie,* 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); *United States v. Lauter,* 57 F.3d 212, 216 (2d Cir.1995). Thus, the only relevant question is whether the search the officers conducted fell within the *Buie* limit of "a cursory inspection of those spaces where a person may be found." *Buie,* 494 U.S. at 335, 110 S.Ct. 1093.

"When reviewing rulings on motions to suppress, we examine the evidence before the district court in the light most favorable to the government, and will disturb factual findings only when they are clearly erroneous." *United States v. Fields,* 113 F.3d 313, 319 (2d Cir.1997). Although neither the box itself nor its measurements were presented at trial, the district court accepted the police officers' testimony that it was large enough for a person to have hidden in; we will not disturb this factual finding.

█ Sixth, defendants assert that the district court erred in admitting excerpts from a 1996 conversation between Juan Fontanez and Edgar Pacheco. The excerpts were admitted as a prior consistent statement to rehabilitate one of the government's witnesses, Fontanez.

A prior consistent statement is admissible for rehabilitation if "the particular consistent statement sought to be used has some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony." *United States v. Castillo*, 14 F.3d 802, 806 (2d Cir.1994).[1] Having heard the testimony, the district court characterized defendant Berrios' cross-examination of Fontanez as strongly implying that Fontanez and Pacheco fabricated their stories while housed together in jail in 1997. This determination is entitled to deference, *see id.*, and, in any case, is amply supported by the trial transcript. The prior consistent statement was made in 1996, well before Fontanez and Pacheco were housed together in jail and has rebutting force beyond the mere fact that Fontanez repeated his testimony at a prior time. Thus, the district court did not abuse its discretion in admitting the Fontanez's prior consistent statement for rehabilitative purposes.

Seventh, defendants claim that the evidence presented was insufficient to sustain their convictions. We consider the evidence in the light most favorable to the government, crediting every inference the jury might have drawn. *United States v. Pipola*, 83 F.3d 556, 564 (2d Cir.1996). "The verdict of a jury must be sustained if there is substantial evidence." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

Defendants attack the credibility of the government's cooperating witnesses, but the jury found those witnesses sufficiently credible to convict. The credibility of testifying witnesses is a determination properly left to the jury. *United States v. Vasquez*, 267 F.3d 79, 90–91 (2d Cir.2001). Our review of the record confirms that the evidence was sufficient for a rational trier of fact to have found the essential elements of the crimes upon which defendants were convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ Finally, defendants suggest that the wording of 18 U.S.C. § 1959(a)(1) does not prescribe a mandatory minimum sentence but leaves open the possibility for downward departure from life imprisonment. That statutory provision provides a penalty of "death or life imprisonment, or a fine under this title, or both." The defendants argue that the peculiar language of the statute, which by its terms would seem to permit imposition of a fine only, means that there is no minimum sentence under the statute and the district court has permission to depart. Our decision in *United States v. James*, 239 F.3d 120 (2d Cir.2000) specifically rejects this argument, essentially because "[t]he notion that the statute contemplates the imposition of a fine without imprisonment cannot be reconciled with the extremely harsh punishments—death or life imprisonment—otherwise available." *Id.* at 127.

For the reasons set forth above, the judgment of the district court is AFFIRMED.

---

**1.** In contrast, a prior consistent statement that satisfies the strictures of Fed.R.Evid. 801(d)(1)(B) falls outside the definition of hearsay and may be introduced for its truth. *Castillo*, 14 F.3d at 806 (describing the two different standards). The government asserts that the statement is admissible under both rubrics; because the district court admitted the statement only for rehabilitation, we need not address whether the statement would be admissible under Fed.R.Evid. 801(d)(1)(B).