**UNITED STATES of America,**

v.

**Jose SANTIAGO, et al., Defendants.**

**No. 00 CR. 237(VM).**

United States District Court,
S.D. New York.

April 11, 2002.

Statement of the Court Regarding
Admissibility of Out of Court
Statements Jan. 28, 2002.

Statement of the Court Regarding
Admissibility of Government
Exhibits Feb. 4, 2002.

Statement of the Court Regarding
Admissibility of Government
Exhibits Feb. 7, 2002.

Statement of the Court Regarding
Admissibility of Plea Allocution
Feb. 11, 2002.

Statement of the Court Regarding
Admissibility of Exp. Ballistics
Testimony Feb. 13, 2002.

Statement of the Court Regarding
Admissibility of Plea Allocution
Feb. 22, 2002.

Gary S. Villanueva, Ricco & Villanueva, New York City, for Jose Enrique Santiago, defendant.

Hershel Katz, New York City, Gerald DiChiara, New York City, for Elvis Rodriguez, defendant.

Austin V. Campriello, Robinson, Silverman, Pearce, Aronshn & Berman, New York City, Kevin McNally, Frankfort, KY, Richard W. Brewster, New York City, for Julius Williams, defendant.

Kenneth Paul, New York City, for Renames Arroyo, defendant.

Robert A. Soloway, Jeremy Schneider, Rothman, Schneider, Soloway & Stern P.C., New York City, for Rafael Guttierez, defendant.

Thomas H. Nooter, Freeman, Nooter & Ginsberg, New York City, for Richard Mercado, defendant.

Winston Lee, Law Office of Winston Lee, New York City, for Jesus Rivera, defendant.

Gail E. Laser, New York City, for Ruben Pacheco, defendant.

Steven M. Bernstein, New York City, for Michael Cofield, defendant.

Michael Hurwitz, Hurwitz, Stampur & Roth, New York City, for Juaquin Diaz, defendant.

Jeremy F. Orden, New York City, for Joseph Gomez, defendant.

Richard E. Signorelli, Stern, Levy & Pellegrino, L.L.P., Leighton Miles, defendant.

Mitchell A. Golub, Golub & Golub, LLP, New York City, Daniel J. Ollen, New York City, for Lawrence Cherry, defendant.

David Touger, Peluso & Touger, New York City, Gino Josh Singer, New York City, for Juan Quinones, defendant.

Mitchell A. Golub, Golub & Golub, LLP, New York City, for Julian Marquez, defendant.

Stewart Leigh Orden, New York City, for Joseph Rini, defendant.

Sanford M. Katz, Katz & Weinstein, New York City, Barry A. Weinstein, Goldstein, Weinstein & Fuld, Bronx, NY,

Sanford N. Talkin, Talkin Muligrosso & Roberts, New York City, for Antonio Rodriguez, defendant.

Allan P. Haber, New York City, Bruce McIntyre, McIntyre & Pope, New York City, for Adrian Agostini, defendant.

Roy R. Kulscar, New York City, for Jose Baerga, defendant.

Aitan D. Goelman, Assistant United States Attorney, Mary Jo White, United States Attorney, Criminal Division, New York City, for U.S. Attorneys.

## *ORDER*

MARRERO, District Judge.

The Court held a jury trial in this matter from January 22, 2002 to March 8, 2002. During the course of the trial the Court made a number of evidentiary rulings on the record. The Court hereby directs that the orders that it issued in connection with those evidentiary rulings be amended by incorporating the Court's corresponding statements made on the record, copies of which are attached hereto.

**SO ORDERED.**

## Statement of the Court Regarding Admissibility Cabrera's Testimony Related to Out of Court Statements by the Assesino Crime Family

MARRERO, District Judge.

**Monday, January 28, 2002**

Before we begin, I would like to address an issue that came up on Friday. The Government's last witness testified about the out-of court statements of others who were members of what he described as the "ACF," or the Assesino Crime Family. Defendants Williams and Agostini objected to these statements and moved to strike all parts of his testimony that contain hearsay related to the ACF, arguing that the ACF

may well have been a conspiracy run by Santiago that was entirely different from the conspiracy in which they are charged to have participated in. The Government contends that the ACF was essentially a wing of younger members of Thief David's Crew who, the evidence will show, actively conspired to distribute narcotics and engage in violence with other non-ACF members of the crew. According to the Government, the evidence will show that ACF and non-ACF members of Thief David's Crew sold drugs together, protected and trusted each other, and had a common goal to maintain control and distribute drugs in and around the area of 137th Street and Brook Avenue in the Bronx.

▆ The exception to the hearsay rule for co-conspirator statements, found in Federal Rule of Evidence 801(d)(2)(e), "requires a court to find by a preponderance of the evidence, first, that a conspiracy existed that included the defendant and the declarant; and second that the statement was made in furtherance of the conspiracy." *See United States v. Padilla,* 203 F.3d 156, 160 (2d Cir.2000) (quoting *United States v. Gigante,* 166 F.3d 75, 82 (2d Cir.1999)). While this court may consider a hearsay statement itself to determine the existence of a conspiracy, it is clear that there must be some independent corroborating evidence of the defendant's participation in the conspiracy.

▆ Therefore, the initial question before the Court is whether the Government has provided independent corroborating evidence that would establish that Williams and Agostini were members of one overarching conspiracy that included ACF members. *Compare with United States v. Orena,* 32 F.3d 704, 713 (2d Cir. 1994) (affirming district court's determination that out of court statements relating to an overarching conspiracy between dif-

ferent families of the Mafia were admissible under Federal Rule of Evidence 801(d)(2)(e)). Although some form of corroboration is required, where, as here, hearsay evidence itself so convincingly implicates the defendant, a court may require less corroboration to find by a preponderance of the evidence that the defendant participated in the conspiracy for purposes of admitting co-conspirators' statements against him. *See Padilla,* 203 F.3d at 162.

Last Friday, citing *United States v. Cote,* 744 F.2d 913 (2d Cir.1984), the Court ruled that the Government does not, at this time, have to establish that the defendants were members of Thief David's Crew to admit co-conspirator statements related to the operation of the group. As *Cote* indicates, this is clearly permitted under Federal Rule of Evidence 104(b) with the caveat that the statements are admitted provisionally with a view to connecting them up later. Although defendants asserted that this is impermissible under *Bourjaily,* footnote one of that opinion clearly stated that the majority of the Supreme Court "intimates no view on the proper standard of proof for questions falling under Federal Rule of Evidence 104(b) ... [or] on the proper order of proof that trial courts should follow in concluding that the preponderance standard has been satisfied in an ongoing trial." *Bourjaily,* 483 U.S. at 176, note 1, 107 S.Ct. 2775.

On Friday, the Government provided a good faith and objectively reasonable belief that the missing links will be supplied as they present their case. The Court noted that if, at the end of the Government's case-in-chief, defendants feel that the Government has failed to connect up the evidence, they will have an opportunity to object and move to strike statements that were provisionally admitted.

■ The same rationale applies to the issue now before the Court. The Govern-ment presented a good faith and objectively reasonable belief that the ACF is merely a sub-group within Thief David's Crew. Furthermore, statements by ACF members relating to drug sales near 137th Street and Brook Avenue are corroborated by the testimony, last Thursday, of the two police detectives who bought crack cocaine from defendant Williams and immediately thereafter arrested him in October 1997. Unlike the conspiracy at issue in *Orena,* the conspiracy alleged here was limited to a small geographical area among a relatively small group of people. Reviewing the evidence received so far, the Court finds that it is highly unlikely that Santiago was running two conspiracies to sell drugs in essentially the same location. Finally, the Court notes that "the identities of both the declarant and the witness who heard the hearsay evidence are non-hearsay evidence" that the Court may consider "in assessing the reliability of the statement and finding the existence of a conspiracy." *See Gigante,* 166 F.3d at 82 (citing *United States v. Tellier,* 83 F.3d 578, 580, note 2 (2d Cir.1996)). Here, the defendants, the ACF members in question, and witness Cabrera all lived in the same area and were allegedly all friends who trusted and protected one another. Accordingly, the Court finds that the identities of the declarant and the witness are another factor which suggests that only one conspiracy existed.

The Court concludes that witness Cabrera's testimony related to the out of court statements of ACF members is provisionally admissible under federal rules of evidence 104(b) and 801(d)(2)(e), subject to the condition that the Government later establish that the ACF was a part of Thief David's Crew and not a separate conspiracy. Defendants are free to renew their objections and motion to strike at the close of the Government's case.

**Statement of the Court Regarding Admissibility of Government Exhibits 3563 G and Q and Elvis Rodriguez's Testimony Regarding His "Circle"**

MARRERO, District Judge.

**Monday, February 4, 2002**

Before we begin, I would like to address two issues that came up last Thursday. The first issue involves the admissibility of Government exhibits 3563–G and 3563–Q. Exhibit 3563–G is a transcript of dictation by FBI agent David Burroughs related to his proffer session with Elvis Rodriguez on March 30, 2000. According to the transcript, Rodriguez had recounted that he met with defendant Agostini and others in a bar on February 19, 2000. According to Rodriguez, Agostini and others allegedly "bragged" about stabbing and slashing someone with whom they had a conflict the same night. The transcript does not reveal the name of the victim. Exhibit 3563–Q contains handwritten notes, dated May 8, 2000, which were purportedly authored by agent Burroughs in another proffer session with Rodriguez. The notes contain numerous abbreviations and are only partially legible.

Last Thursday, Mr. McIntyre attempted to use these two documents along with others to impeach the credibility of Rodriguez's testimony. For example, Mr. McIntyre asked Rodriguez if he failed to tell the Government when he met with them on March 30, 2000, the name of the victim of Agostini's alleged stabbing. When Rodriguez testified that he could not recall, Mr. McIntyre used exhibit 3563–G to refresh Mr. Rodriguez's recollection about the proffer session on March 30, 2000 and more specifically left the impression that the document somehow indicated that Rodriguez purposefully did not disclose or said he did not know the name of the victim at the first proffer session. To some extent, Mr. McIntyre's cross-examination implicitly mis-characterized the document. The document neither indicates that Rodriguez was asked about the name of the victim nor that he said he could not recall the name. In fact, the document mentions nothing on this point. To this extent, a number of other explanations for the silence may be plausible. It is possible, for example, that Rodriguez mentioned the name and agent Burroughs failed to include it in his notes.

██ Given that Mr. McIntyre attacked Rodriguez's testimony with the use of exhibit 3563–G on this basis, the Court concludes that it is appropriate to allow the Government to rehabilitate Rodriguez's testimony with this document. The Government has asserted that the document is not hearsay under Federal Rule of Evidence 801(d)(1)(b). However, caselaw in this circuit is clear that to qualify as non-hearsay under 801(d)(1)(b), a prior consistent statement must have been made before the declarant had a motive to fabricate. *See United States v. Brennan*, 798 F.2d 581 (2d Cir.1986). Here, the Government interpretation of Agostini's recent fabrication theory appears to be that Rodriguez was jealous and resentful of Agostini on account or Rodriguez's break-up with Lasandra Sotto, whom Agostini had previously dated. The Government points out that the breakup occurred in the summer of 2000, sometime after Rodriguez's proffer sessions. However, the testimony Mr. McIntyre elicited suggested that Rodriguez may have harbored resentment and animus towards Agostini on this ground before the proffer session because Agostini's relationship with Soto had already predated his own.

██ That does not put an end to the issue, however. Even if a prior consistent statement is not admissible under 801(d)(1)(b), such a statement may be used

for rehabilitation when the statement has probative force bearing on credibility beyond merely showing repetition. The controlling authority on this issue in this Circuit is found in *United States v. Castillo*, 14 F.3d 802 (2d Cir.1994) and *Castillo*, 14 F.3d at 805 (citing *United States v. Pierre*, 781 F.2d 329, 333–34 (2d Cir.1986)). When a prior consistent statement tends to cast doubt on whether the prior inconsistent statement was made, its use for rehabilitation lies within the sound discretion of a trial court. *See id.* Such use is also permissible when the consistent statement will amplify or clarify the allegedly inconsistent statement. In *Brennan*, the Second Circuit specifically stated that: "It matters not ... whether the inconsistent statement is put in through specific testimony or through mischaracterization or suggestive or misleading cross-examination. The question is not whether the defense introduces a specific statement, but rather whether it has made a specific attack on a witness's credibility." 798 F.2d at 589 (quoting *United States v. Zito*, 467 F.2d 1401, 1404 (2d Cir.1972) and *Pierre*, 781 F.2d at 333–34).

Here, the introduction of exhibit 3563–G will clarify that the document does not expressly indicate that Rodriguez said he did not know or could not remember the name of Agostini's alleged victim to the Government investigators. Although Rodriguez did testify that it refreshed his recollection that he didn't remember the name during the proffer session, this was in response to cross-examination that presumed facts not contained in the document and this may have created a misleading impression. Accordingly, the Government may introduce the exhibit to rehabilitate Rodriguez's testimony.

Although a similar analysis applies to the admissibility exhibit 3563–Q, this document is barely legible and does not indicate who the author is. It may very well have been authored by agent Burroughs and it may reveal that Rodriguez made statements in his May 8, 2000 proffer session that were consistent with his trial testimony, but none of this clear from the document. Accordingly, the Court finds that for the document to be admissible even for the limited purpose of rehabilitation it will require the laying of a stronger foundation for its introduction.

Turning to the second issue presented by Mr. Campriello's motion to strike portions of Rodriguez's testimony about his "circle", the Court has reviewed the transcript and the Government's February 3, 2001 letter on the issue. The Court denies Mr. Campriello's motion due, in part, to the fact that he failed to make a timely objection to the testimony and also due to the fact that it was his co-counsel, Mr. McIntyre, who first raised the issue of who Mr. Rodriguez's circle is. *Compare with United States v. Jimenez*, 618 F.Supp. 799, 804 (S.D.N.Y.1985). It is not clear what Mr. Rodriguez meant by saying that the co-defendants on trial were a part of his circle. He could have meant a part of his drug-selling conspiracy or he could have meant a part of his social circle. To the extent that Mr. Campriello feels that this ambiguity prejudices his client, he is free to call Mr. Rodriguez to examine what he meant when used this phrase in his testimony.

### Statement of the Court Regarding Admissibility of Government Exhibits 804 Through 808 And Exhibits 421 and 422

MARRERO, District Judge.

**Thursday, February 7, 2002**

■ Before we begin, I would like to address the Government's motion to introduce hospital records and pictures related to Francisco Martinez's testimony about

being shot in the early morning on April 19, 1998. Government exhibits 804, 805, and 807 contain hospital records created soon after a number of individuals were shot on April 19, 1998. The Court does not have copies of exhibits 806 and 808 and was not able to review these documents. An initial matter, the Court notes that hospital records made for purposes of medical diagnosis or treatment are clearly admissible under federal rule of evidence 803(4).

Having reviewed the documents and the transcript related to Mr. Martinez's testimony, as well as the testimony of Sara Carvajal, the Court concludes that the records are relevant and significantly probative as to what time the shootings occurred. Exhibit 804 indicates that Martinez was admitted to Lincoln Hospital on April 19, 1998 at 5:08 a.m. Exhibit 807 indicates that his friend, Daniel Espinosa, was admitted at 5:33 a.m. on the same day. And exhibit 805 indicates that Sara Carvajal was admitted at 5:05 a.m. on the same day. Exhibits 804 and 805, combined with the testimony of several witnesses could support an reasonable inference by the jury that the shootings occurred at approximately the same place around the same time. The time of each hospital record could help resolve the question of whether there was one incident or two incidents and whether the events occurred at the Loft or at Club X. There is not a proper foundation for the admission of exhibit 807, because although Martinez testified that Espinosa was involved in the fight with him that evening, he did not testify that Espinosa was stabbed or wounded in any way.

Turning to government exhibits 421 and 422, the Court finds that the prejudicial effect of these pictures outweighs their probative value and they are therefore inadmissible. Mr. Martinez and Ms. Carvajal have already testified that they and others were shot and showing the jury these pictures would be of minimal assistance in establishing that fact.

## Statement of the Court Regarding Admissibility of Government Exhibit 3555-P

MARRERO, District Judge.

### Thursday, February 11, 2002

Before we begin, I would like to address an issue that came up during the Government's redirect examination of Michael Cofield. Mr. Goelman sought to introduce Government exhibit 3555-P, which is a series of handwritten notes created when he met with the police on July 30th and 31st of 1998. The exhibit contains four notes in total, each signed by Mr. Cofield in handwriting that appears to be different from the handwriting of the note itself. At a sidebar, Mr. Goelman asserted that Mr. Villanueva had "opened the door" to the introduction of these documents by impeaching him through a number of questions about statements that he made to the police in 1998. Mr. Campriello contended that the documents contain inadmissible hearsay and that their introduction would amount to improper bolstering of Mr. Cofield's testimony.

The Court finds that pages four through eight of the exhibit, which contain a note written on July 30, 1998 and describe a shooting involving Bloody Rich and Dojo, are admissible to rehabilitate Mr. Cofield's testimony. Upon review of the transcript, it is clear that Mr. Villanueva impeached the credibility of Mr. Cofield's testimony based on alleged lies that he made to the police about this incident in July of 1998. *See* February 6, 2002 Tr. at 2822 to 2826.

When a prior consistent statement tends to cast doubt on whether the prior inconsistent statement was made, its use for rehabilitation lies within the sound discre-

tion of a trial court. *See United States v. Castillo,* 14 F.3d 802 (2d Cir.1994) and *Castillo,* 14 F.3d at 805 (citing *United States v. Pierre,* 781 F.2d 329, 333–34 (2d Cir.1986)). Such use is also permissible when the consistent statement will amplify or clarify the allegedly inconsistent statement. *See id.*

Here, the introduction of pages 4 through 8 of exhibit 3555–P will provide useful background to Mr. Cofield's testimony on cross-examination that he lied to the police about his possession of a gun in the encounter with Bloody Rich. However, the Court does not agree with the Government as to the admissibility of the first three pages of the exhibit. Although these notes were created a day later, presumably in a similar meeting with the police, they have no direct connection to the line of questions asked by Mr. Villanueva. Furthermore, they contain incriminating statements about defendant Williams and their introduction would be highly prejudicial. Accordingly, the Court concludes that the first three pages of exhibit 3555–P are inadmissible.

### Statement of the Court Regarding Admissibility of Adrian Agostini's Plea Allocution

MARRERO, District Judge.

#### Thursday, February 11, 2002

Before we begin, I would like to address the issue that came up this morning with respect to the admissibility of Mr. Agostini's plea allocution related to his sale of narcotics on 104th Street in the Bronx. As an initial matter, the Court notes that Mr. Agostini pled guilty on June 16, 1998 for a narcotics sale to an undercover police officer on November 19, 1997. The Court also notes that Count Three of the Indictment charges that Mr. Agostini participated a narcotics conspiracy from 1994 through march 2001. It does not allege that he joined the conspiracy in the summer of 1999.

However, a review of the testimony of several cooperating witnesses, namely Eric Cabrera, Eric Rodriguez, and Michael Cofield, indicates that Mr. Agostini allegedly bought and sold narcotics some time in the summer of 1999. There is no evidence that Mr. Agostini was participating in the charged conspiracy when he sold narcotics to the undercover police officer in November 1997.

The Government's contention is that even if Agostini's 1998 plea allocution is not directly related to the charged conspiracy, it is admissible under Federal Rule of Evidence 404(b) to show that he has relevant experience selling narcotics in the past, which would establish that he had the requisite knowledge or intent join the conspiracy charged in Count Three of the Indictment. In contrast, Mr. Agostini maintains that his plea allocution is not probative as to the question of whether he became a knowing member of the charged conspiracy. Mr. Agostini asserts that the narcotics sale underlying his plea allocution happened with different parties at a different location and at a different time than that which is charged in the Indictment.

Under the "inclusionary approach" to Federal Rule of Evidence 404(b) followed in this Circuit, evidence of prior acts is admissible for any purpose other than to show a defendant's criminal propensity. *See United States v. Pitre,* 960 F.2d 1112, 1118 (2d Cir.1992) (citing *United States v. Roldan–Zapata,* 916 F.2d 795, 804 (2d Cir.1990)). However, under Federal Rule of Evidence 403, such evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See id.* Evidence of prior acts may be admitted to inform the jury of the back-

ground of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed. *See id.* (citing *Roldan–Zapata*, 916 F.2d at 804). Such evidence may also be admitted to prove intent or knowledge when a defendant's intent or knowledge is clearly at issue. *See id.* (citing *United States v. Caputo*, 808 F.2d 963, 968 (2d Cir.1987)).

■■■ Although conceivably, Agostini's 1998 plea allocution could provide some background to the conspiracy charged in Count Three, the number of inferences required to do this would be too great. Therefore, the sole issue is whether the plea allocution is admissible to prove Agostini's intent or knowledge to participate in the charged conspiracy. In this case, as in *Pitre*, which I have previously cited, the Government is required to prove that Mr. Agostini knowingly or intentionally conspired to distribute narcotics, or possessed narcotics with an intent to distribute. *See* 21 U.S.C. § 846.

Accordingly, like the defendants in *Pitre*, evidence of Mr. Agostini's involvement in prior narcotics transactions is probative of his intent or knowledge in connection with charged conspiracy. Mr. Agostini's intent to participate in the charged conspiracy was clearly called into question when his counsel, Mr. McIntyre, in his opening statement, stated that the Government would fail to provide sufficient evidence of Mr. Agostini's participation in narcotics transactions to support a guilty verdict. *See* Tr. at 415 to 417. Mr. McIntyre further asserted that his client innocently associated with many people in the area but that "he never dealt drugs with any association" and that "he didn't commit any assault in furtherance of any conspiracy." *See id.*

■■■ The Court notes that as a general rule, the offer of evidence to prove a defendant's intent or knowledge should await to the conclusion of the defendant's case. *See Pitre*, 960 F.2d at 1120. However, where it is apparent that intent will be in dispute, evidence of prior or similar acts may be introduced during the Government's case-in-chief, "rather than waiting until the conclusion of the defendant's case." *See id.* Finally, the Court concludes that the probative value of Mr. Agostini's plea allocution outweighs the prejudicial effect that it may have. The Court notes that evidence of Mr. Agostini's prior narcotics transaction does not involve conduct any more sensational or disturbing than the crimes with which he is charged. *Compare with Pitre*, 960 F.2d at 1120.

### Statement of the Court Regarding Admissibility of Expert Ballistics Testimony

MARRERO, District Judge.
**Thursday, February 13, 2002**

■■■ The Court has received and reviewed the Government's letter dated February 11, 2002 and Mr. Campriello's letter on behalf of defendant Williams dated February 12, 2002 regarding the admissibility of testimony by the Government's ballistics expert, Joseph Amato. It is the Court's understanding that Mr. Amato will offer an opinion as to whether particular bullets found by the police at a crime scene match some of the weapons seized from a particular apartment. As an initial matter, the Court notes that Judge Pollock's opinion in *United States v. Llera Plaza*, although interesting and well written, has no bearing on the Court's analysis in this case. Not only is the case from another Circuit, it involves testimony about fingerprints, not ballistics. Furthermore, as Judge Pollock acknowledges in his opinion, the Seventh Circuit has specifically held,

post *Daubert,* and post-*Kumho Tire,* that similar expert testimony about matching fingerprints was admissible. *See United States v. Havvard,* 260 F.3d 597 (7th Cir. 2001). The Court has not found a single case in this Circuit that would suggest that the entire field of ballistics identification is unreliable.

Putting that aside, the issue before the Court is whether Mr. Amato's testimony will be relevant and reliable. To resolve this issue the Court must address two questions: (1) whether Mr. Amato qualifies as an expert by knowledge, skill, experience, training, or education; and (2) whether Mr. Amato's testimony will assist the jury to understand the evidence or to determine a fact in issue. *See* Federal Rule of Evidence 702. It is clear to the Court that Mr. Amato's testimony on ballistics identification will assist the jury to determine a fact in issue. In particular, the testimony will assist the jury answer the question of whether bullets and shell casings recovered from the June 15, 1998 crime scene at Cypress Avenue and East 138th Street in the Bronx were fired from a particular gun recovered from a police search of 600 East 137th Street, Apartment 12–H. The reliability of Mr. Amato's testimony is a separate issue.

As the Court stated in its Order dated February 8, 2002, it is the Government's burden to establish the admissibility of Mr. Amato's expert opinion by a preponderance of the evidence. That does not mean, however, that the Government must satisfy each and every *Daubert* factor that Mr. Campriello cited in his letter. The Supreme Court has clearly stated that "the test of reliability is flexible and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it

enjoys in respect to its ultimate reliability determination." *Kumho Tire Company, Ltd. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Later in the opinion, the Supreme Court stated that "whether the *Daubert* factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho,* 526 U.S. at 152, 119 S.Ct. 1167. The Court also notes, as stated by my colleague Judge McKenna, that a trial judge is not required to hold an evidentiary hearing if the parties have provided a sufficient basis for a decision. *See Bank Brussels Lambert v. Credit Lyonnais Suisse,* 2000 WL 1694321 at *1 (S.D.N.Y. Nov.13, 2000) (citing Weinstein's Federal Evidence § 702.02[2] at 702–7 to 702–8 (2d ed.2000)).

In its letter, the Government has indicated that Mr. Amato was assigned to the police laboratory's firearm analysis section for more than 10 years, where his duties included microscopic analysis of ballistics evidence. He has tested over 8,000 firearms for operability and identification, has performed tens of thousands of microscopic examinations, and has provided expert testimony in various courts, including courts in this District more than 466 times. The Government also described the method that Mr. Amato used to match particular guns to the bullets in question in this case. Although it is premature to rule on the Mr. Amato's qualification as an expert, the Court's prediction, based on the Government's representations in its letter, is that the Government will not have a difficult time meeting its burden. To the extent that Mr. Williams asserts that the entire field of ballistics identification is unacceptable "pseudo-science," the Court disagrees.

The Court has not conducted a survey, but it can only imagine the number of

convictions that have been based, in part, on expert testimony regarding the match of a particular bullet to a gun seized from a defendant or his apartment. It is the Court's view that the Supreme Court's decisions in *Daubert* and *Kumho Tire*, did not call this entire field of expert analysis into question. It is extremely unlikely that a juror would have the same experience and ability to match two or more microscopic images of bullets. In fact, in one recent opinion, the Supreme Court used the example of expert testimony on ballistics to provide a contrast to the marginal utility of polygraph evidence. The Court stated "unlike expert witnesses who testify about factual matters outside the juror's knowledge, such as the analysis of fingerprints, ballistics, or DNA found at a crime scene, a polygraph expert can supply the jury only with another opinion, in addition to its own, about whether the witness was telling the truth." *See United States v. Scheffer*, 523 U.S. 303, 312, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). Furthermore, in *Kumho Tire*, the Supreme Court suggested that a witness whose expertise was based *purely* on experience, such as that of a perfume tester, would qualify as an expert if "his preparation is of a kind that others in the field would recognize as acceptable." *Kumho Tire*, 526 U.S. at 151, 119 S.Ct. 1167.

The Court concludes that the reliability of Mr. Amato's expert testimony can be answered through the foundation that the Government must establish before the Court accepts Mr. Amato as an expert witness. The Court expects the Government to ask Mr. Amato about his training, experience, qualifications, and the methods he used to match the bullets with the guns in question. The Court is also interested to learn how often Mr. Amato's identifications have been wrong in the past and the degree to which his methodology has been accepted in the community of forensics experts. The Supreme Court's decision in *Kumho Tire* makes clear that this does not have to be a scientific community, as Mr. Campriello seems to suggest in his letter.

Counsel for defendants are free to challenge Mr. Amato's qualifications or his methodology through voire dire if they would like. I anticipate that the voire dire can be done in front of the jury but, if necessary, on my own initiative or at the request of any party, I will tell the jury that we will take a fifteen to thirty minute recess, and the parties can continue a short examination of Mr. Amato's qualifications and the methodology he used out of the jury's presence.

### Statement of the Court Regarding Government's Questions About Adrian Agostini's 1998 Plea Allocution

MARRERO, District Judge.

**Thursday, February 22, 2002**

 Before we begin, I would like to come back to the issue that came up yesterday related to the Government's line of questions about defendant Agostini's plea allocution related to his sale of narcotics on what the parties have now stipulated was on 140th Street in the Bronx.

You will recall that the Court deemed that defendant Agostini's June 16, 1998 plea allocution was admissible under Federal Rule of Evidence 404(b) for the limited purpose of establishing that he became a knowing member of the conspiracy alleged in the Indictment. The Court found that, like the defendants in *United States v. Pitre*, 960 F.2d 1112 (2d Cir.1992), evidence of Mr. Agostini's involvement in prior narcotics transactions was probative of his intent or knowledge in connection with charged conspiracy. *See id.* at 1118. The Court also allowed defendant Agostini's plea allocution to be introduced during the Government's case-in-chief since his intent to participate in the charged conspiracy

had been called into question when his counsel, Mr. McIntyre, in his opening statement, asserted that his client innocently associated with many people in the area but that "he never dealt drugs with any association" and that "he didn't commit any assault in furtherance of any conspiracy." *See* Tr. at 415–17.

Yesterday on cross-examination, defendant Agostini testified that he did not know that his co-defendants in 1998 were selling drugs at the time he was arrested. Thus, although he pled guilty in 1998 to knowingly attempting to sell illegal narcotics, he claimed that he did not "know" that narcotics were being sold until after he was arrested. Since the Court originally admitted the plea allocution to show that defendant Agostini knowingly became a member of the conspiracy charged in this case, and was not innocently associating with defendant Santiago and others on 137th Street, it was entirely proper for the Government to question how he could have pled guilty to knowingly attempting to sell illegal narcotics in 1998. Defendant Agostini's counsel has argued and implied in both his opening statement and in his direct examination of his client that Mr. Agostini was innocently associating with defendant Santiago and other alleged co-conspirators on 137th Street. To the extent that he denies knowledge that his co-defendants were selling drugs in 1998 and that he became a knowing member of the conspiracy alleged in the Indictment, it is entirely proper for the Government to probe into this. This is not a situation where prior conviction has no bearing on the credibility of a non-party witness. Here, a defendant has denied knowledge and the Government is entitled to use a prior guilty plea to attempt to prove otherwise.