UNITED STATES of America

v.

**Aaron Demarco FOSTER, et al.**

**No. CRIM. CCB–02–0410.**

United States District Court,
D. Maryland.

Feb. 19, 2004.

Teresa Whalen, Law Office of Teresa Whalen, Silver Spring, MD, William B. Purpura, Jr., Law Office of William B. Purpura, Baltimore, MD, for defendants.

Gloria Wilson Shelton, J. Joseph Curran, Jr., Baltimore, MD, for movant.

Andrea L. Smith, Stephanie Agli Gallagher, Thomas M. DiBiagio, Baltimore, MD, for plaintiff.

## MEMORANDUM

BLAKE, District Judge.

The defendants in this federal death penalty case have filed a Motion in Limine to Exclude Government's Proposed Expert Testimony Relating to the Comparison of Spent Bullet Casings (docket no. 167). An evidentiary hearing was held on November 3, 6, and 7, 2003, and the issues have been fully briefed. For the reasons stated below, the motion will be denied.

Two specific sets of ballistics evidence are proffered by the government, one during the guilt-innocence phase, and one for the sentencing phase, if needed. During the first stage, the government seeks to prove that .25 caliber cartridge casings from the murder of Vance Beasley on March 21, 2002, in Baltimore County, match .25 caliber casings associated with the shooting of Anthony "Boogie" Walker on January 19, 2002 in the Lexington Terrace area of Baltimore City. During sentencing the government may seek to prove that .40 caliber cartridge casings found at the murder of Kevin James on June 11, 1999 match those from a .40 caliber handgun used in the shooting of Byron Parker on May 27, 1999. Michael Taylor is allegedly associated with the Beasley and Walker shootings; Keon Moses is alleged to have been involved with the James murder and pled guilty to a handgun charge in connection with the Parker shooting. This opinion does not address any evidentiary issues other than the ballistics.

The defendants bring their challenge under Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals. Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Helpful guidance is provided by the Fourth Circuit's decision in *United States v. Crisp,* 324 F.3d 261 (4th Cir. 2003), rejecting a *Daubert* challenge to testimony concerning fingerprint and handwriting analysis. As stated in *Crisp,* "the touchstones for admissibility under *Daubert* are two: reliability and relevancy." 324 F.3d at 268. The "imprimatur of a strong general acceptance, not only in the expert community, but in the courts as well," carries great weight in establishing the requisite reliability. *Id.* In this case, the testimony of Supervisory Special Agent Paul Tangren, a Firearms Tool Marks Examiner with the Federal Bureau of Investigation, established to the court's satisfaction the general reliability of the science of ballistics, including comparisons of spent cartridge casings even where there is no "known" weapon recovered.[1]

---

1. Ballistics evidence has been accepted in criminal cases for many years. The first comprehensive textbook of ballistics, *Firearms Investigation. Identification and Evidence,* was published by Major Julian S. Hatcher in 1935. In the years since *Daubert,* numerous cases have confirmed the reliability of ballistics identification. *See, e.g., United States v. Santiago,* 199 F.Supp.2d 101, 111 (S.D.N.Y.2002) ("The Court has not found a single case in this Circuit that would suggest that the entire field of ballistics identification is unreliable.... To the extent that [the defendant] asserts that the entire field of ballistics identi-

fication is unacceptable 'pseudo-science,' the Court disagrees."); *United States v. Cooper,* 91 F.Supp.2d 79, 82–83 (D.D.C.2000) (implying that ballistics identification involves "well-established" scientific principles); *United States v. Davis,* 103 F.3d 660, 672 (8th Cir.1996) (upholding the use of expert testimony to link bullets recovered from a crime scene to a firearm associated with the defendant); *cf. United States v. Scheffer,* 523 U.S. 303, 313–14, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (contrasting polygraph evidence with other more accepted fields of expert testimony, including ballistics).

As Agent Tangren explained, identifications are made where the class characteristics are the same, or at least not in conflict, and there is sufficient agreement in the individual characteristics to lead a firearms examiner to conclude the specimens were fired from the same gun. (Tr. 11/3/03 at 34.) [2] Comparisons are made under the microscope by experienced examiners and, at least in the case of Baltimore City and Baltimore County, immediately reviewed by another examiner. Both must agree before an identification is made. Agent Tangren clearly explained the standards applied, the peer review literature that has been published, the proficiency testing generally applied to firearms examiners, and the general acceptance of comparative microscopy for the purposes of firearms identification. (Tr. 11/3/03 at 41–60.) As he stated, the "human ability to recognize a similar pattern and distinguish between dissimilar patterns" makes identification possible. (Tr. 11/3/03 at 39.) No contrary expert testimony was offered.

Further, testimony was offered by the experienced firearms examiners with Baltimore City and Baltimore County who performed the specific examinations in this case. They thoroughly explained their training and the general procedure they follow in making comparisons and identifications of spent cartridge casings. While the differences in standards and practices among the FBI, Baltimore City, and Baltimore County firearms laboratories may be subjects for cross-examination, they were not sufficient to render the proffered testimony unreliable under *Daubert*. Similarly, the fact that an examiner may not recall or be able to explain to counsel's satisfaction each aspect of a specific comparison he or she performed is material for cross-examination but not sufficient to exclude that opinion from the jury's consideration. *See Crisp*, 324 F.3d at 269–70. Moreover, the casings themselves are available for a defense expert to examine and offer a contrary opinion if warranted. No such opinion was proffered in this case.

A separate Order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby ORDERED that:

1. the defendants' Motion in Limine to Exclude Government's Proposed Expert Testimony Relating to the Comparison of Spent Bullet Casings (docket no. 167) is **DENIED**;

2. copies of this Order and the accompanying Memorandum shall be sent to counsel of record.

---

**2.** In Agent Tangren's words, "Agreement is sufficient when it exceeds the best agreement demonstrated between toolmarks known to have been produced by different tools and is consistent with the agreement demonstrated by toolmarks known to have been produced by the same tool." (Tr. 11/3/03 at 34–35.)